STATE v. J. M. RUMBERG.[1]

June 13, 1902.[2]

Nos. 12,996—(20).

86  399
f86  399

## Adulteration of Food—Use of Preservatives.

Held, that by amendment (Laws 1901, c. 348) to Laws 1899, c. 257, all food products have not been brought within the purview of the act. The amendment covers and embraces only such articles of food as may be made from milk and cream. It does not prohibit the use of preservatives in meats.

Defendant was convicted in the municipal court of Minneapolis, Holt, J., of the offense of selling chopped meat to which borax had been added as a preservative, in violation of the provisions of Laws 1901, c. 348. From the judgment of conviction and from an order denying a motion for a new trial, defendant appealed. Reversed, and judgment ordered for defendant.

Rome G. Brown and Charles S. Albert, for appellant.

W. B. Douglas, Attorney General, and E. F. Waite, Assistant City Attorney, for the State.

[1] STATE v. C. F. WAGENHALS.

June 13, 1902.

Nos. 12,997—(21).

Appeal by defendant from a judgment of the municipal court of Minneapolis, Holt, J., and from an order denying a motion for a new trial. Reversed, and judgment ordered for defendant.

Rome G. Brown and Charles S. Albert, for appellant.

Wallace B. Douglas, Attorney General, and E. F. Waite, Assistant City Attorney, for the State.

PER CURIAM.

This appeal follows the decision in State v. Rumberg.

Order reversed, and cause remanded, that judgment may be entered for defendant.

[2] Reported in 90 N. W. 1055, 1133.

COLLINS, J.

Under the provisions of Laws 1901, c. 348, the defendant, Rumberg, was prosecuted for selling chopped meat to which borax, in powdered form, had been added as a preservative. He was convicted in the court below, and appealed from an order refusing a new trial. As we regard the case, the primary question to be determined is the applicability of the above-mentioned statute to meats and other foods, not products of the dairy.

Specific legislation prohibitive of the use of chemical agents as preservatives was inaugurated in this state by the enactment of Laws 1899, c. 257, the title thereof being, "An act to prevent the use of chemical agents as preservatives in milk, cream, cheese and butter." This title was clear and comprehensive, specially mentioning four, and only four, articles. In section 1 the prohibition was not only directed to these four articles, but also to "any other dairy products,"—a fact which suggests that this legislation was not as carefully scrutinized when before the lawmakers as it should have been, and that the restricted title was not kept in mind by them. At the next session of the legislature, this statute was amended. Laws 1901, c. 348. The title to the amendatory act is brevity itself, as follows: "An act to amend the title and section one (1) of chapter two hundred and fifty-seven (257), General Laws of Eighteen Hundred and Ninety-Nine (1899)." The amendment attempted under this title to the title and to the body of the 1899 act can best be understood by quoting a part of chapter 348, with the inserted and amendatory words italicized. It was provided (section 1) that the title to chapter 257 should be amended so as to read as follows: "An act to prevent the use of chemical agents as preservatives in milk, cream, cheese and butter, *or food products of any nature whatever.*" Section 1 of chapter 257 was then amended thus:

"Any person, firm or corporation who shall sell, or offer for sale, or consign, or have in his possession with intent to sell to any person or persons, any milk, cream *or food products of any nature whatever*, butter, cheese or any other dairy products, or who shall deliver to any creamery or cheese factory, milk or cream to be manufactured into butter or cheese, to which has been added any preparation in powdered or liquid form, known as preservatives,

or any other compounds containing antiseptics, shall be deemed guilty of a misdemeanor. * * * This act shall not be construed to prohibit the use of salt in butter."

Concisely stated, the legislation of 1901, under a title which suggested no intent or purpose to widely extend the prevailing prohibitive policy as to the use of preservatives in milk, cream, butter, and cheese, injected into the title of the 1899 act the words "or food products of any nature whatever," and then inserted in section 1, between the words "cream" and "butter," where they first appeared in that section, the phrase "or food products of any nature whatever." No other change was made. In both statutes was the provision under which the use of salt in butter was permitted. If it was the design of the lawmaking branch of the state government to inaugurate a radical change in the law respecting the use of preservatives, and to extend the scope of the statute so as to bring within its operation all food products, it would seem that it should have been done by original and direct legislation, and not by an amendment which is equivocal and uncertain.

As before stated, the primary question in this case, and the one upon which we shall dispose of this appeal, is whether the amendatory act, in the form in which it was passed, was intended to cover, or has covered, all food products, or has simply brought within its purview all items of food which may be made from milk and cream, and which were not covered by the original act, which only related to and specified milk, cream, butter, cheese, and other dairy products as the articles in which preservatives were not to be used. If by a fair construction of the 1901 act the intent of the legislature to change the prevailing policy of the state is not manifest, the statute is insufficient to embrace and include the food product mentioned in the complaint in this proceeding.

The language in the body of the act, through which it is claimed all food products of every nature have been brought within its terms, must be sufficiently definite to indicate the purpose of the legislature to prohibit the use of chemical agents as preservatives in meats, or no offense was committed by defendant. In deter-

86 M.—26

mining this, we can take into consideration the title to chapter 348 (which does not indicate any intent to make such change or amendment to the earlier law), the construction and connection of the phrase inserted, the fact that the provision in chapter 257 which permitted the use of salt in butter was retained in chapter 348 (the inference being that the design was to forbid its use in other articles covered by either law), and, in addition to all this, the conviction, before suggested, that if the legislature had intended to prohibit the use of chemical agents as preservatives in all articles of food, not only including many articles which are made more palatable by such use, but also articles in which such preservatives have been used for years, and are actually necessary, there would have been no uncertainty in the language used, or in the manner of expressing this intent. The purpose would not have been left in doubt. Had it been intended to prohibit the use of all preservatives, upon the theory that all are injurious to the public health, or that it is impossible to distinguish between the good and the bad, or had it been the intent simply to prohibit the use of such as may be shown to be deleterious, we might reasonably expect a statute containing apt and adequate provisions for the accomplishment of the object in view, not a statute presenting the uncertainty which pervades chapter 348. We hold that the attempted amendment of 1901 was not sufficiently explicit to cover all food products.

There is evidently a tendency toward the enactment of pure-food laws, and because of this we take occasion to say that no case in this state is authority for the assertion that it is within the power of the legislature to enact a law forbidding the use of all chemical agents in the preservation of articles of food. Nor do we know of authority elsewhere for such a proposition. It cannot well be doubted, however, that it is within the power of the legislature to prohibit the use in food products of all kinds of chemical preservatives which are, or, if injudiciously applied, may prove, deleterious and injurious to the consumers of such products, or which may be used for fraudulent purposes. This power was asserted, recognized, and established many years since.

It may be exercised as time and experience demonstrate the necessity.

Order denying new trial is reversed, and upon remanding the cause, the court below will cause judgment to be entered for the defendant.