## ALBERT v. GIBSON.

1. STATUTES—CONSTRUCTION—DUTY OF COURTS.

   Courts are bound to endeavor, by every rule of construction, to ascertain the meaning of, and to give full force and effect to, every enactment of the legislature not obnoxious to constitutional prohibitions.

2. CONSTITUTIONAL LAW—STATUTES — CONSTRUCTION IN FAVOR OF CONSTITUTIONALITY.

   Statutes must be so construed as to render them constitutional, if such construction is reasonably possible.

3. DRAINS—STATUTE—IMPOSSIBILITY OF ENFORCEMENT.

   The provision of the general drain law, that an application for the establishment of a drain shall be signed by not less than ten freeholders, five or more of whom shall be owners of land "liable" to an assessment for benefits in the construction of such drain, means that at least five of the signers must be persons who may properly be assessed for benefits, and, as so construed, is not subject to the objection of being impossible of enforcement.[1]

4. SAME.

   Act No. 495, Local Acts 1903, relative to the establishment of drains in Saginaw county, which provides that, before the drain commissioner shall take any action, there shall be filed with him an application, signed by not less than one-third of the freeholders "of the land to be drained thereby and to be assessed therefor," is inoperative because of impossibility of enforcement, there being no means by which it can be ascertained beforehand what lands are to be drained or liable to assessment.

5. CONSTITUTIONAL LAW — LEGISLATIVE POWERS—DELEGATION TO SUPERVISORS.

   Under section 38 of article 4 of the Constitution, the legislature may, as it did in Act No. 237, Pub. Acts 1903, delegate to the board of supervisors of a county power to fix and determine conditions in contracts for the construction or improvement of drains additional to those prescribed by the statute.

---

[1] As to procedure for establishment of drains and sewers, see note to State, ex rel. Utick, v. Polk County Com'rs (Minn.), 60 L. R. A. 161.

6. SAME—STATUTES—CONSTRUCTION—POLICY OF THE LAW.

    Whether the effect of legislation authorized by the Constitution is good or bad is not for the courts to determine but for the legislature alone.

Certiorari to Saginaw; Beach, J.  Submitted September 21, 1905.  (Calendar No. 21,158.)  Decided November 21, 1905.

Mandamus by Charles Albert and others to compel Orin E. Gibson, county drain commissioner, to act upon a petition for the establishing of a certain drain.  From an order granting the writ, respondent brings certiorari.  Reversed.

*James H. Davitt*, for relators.

*Frank A. Rockwith*, Prosecuting Attorney (*G. W. Davis*, of counsel), for respondent.

BLAIR, J.  Relators filed a petition in the circuit court for the county of Saginaw, asking that an order be granted requiring respondent, the county drain commissioner of Saginaw county, to show cause why a peremptory mandamus should not issue to compel him to take action upon an application presented to him by relators, as freeholders of the townships of Albee and Maple Grove in said county, for the construction of a public drain.  Relators' application was in due form under the general drain law, but respondent refused to entertain it or act upon it, for the reasons:

1.  That not one-third of the freeholders of the lands to be drained thereby and to be assessed therefor had signed said application, as required by Act No. 495 of the Local Acts of 1903.

2.  Because a majority of the members of the township boards of each of the townships of Albee and Maple Grove had not approved said application in writing, as required by a resolution passed by the board of supervisors of Saginaw county, under the authority of Act No. 91 of the Public Acts of 1901, as amended by Act No. 237 of the Public Acts of 1903.

Respondent filed his answer to the petition of relators, admitting that his refusal to entertain the application for a drain was for the reasons above set forth, and, the question of law raised by the pleadings having been submitted to the court, he granted the writ of mandamus, as prayed for; filing the following opinion as his reasons therefor:

"I am satisfied that the board of supervisors have no power or authority to make laws. That is left entirely with the legislature of the State, and the resolution that was passed by the board, in my opinion, is void and of no effect, because the act of the legislature upon which it rests is unconstitutional.

"Section 1 of article 4 of the Constitution provides that the legislative power is vested in a senate and house of representatives; and the act that attempts to confer upon the supervisors of Saginaw county power to amend the drain laws of this State undertakes to confer upon the board legislative power, which only the legislature itself possesses and can lawfully exercise, and it is therefore void.

"Act No. 495 of the Local Acts of 1903, requiring that one-third of the freeholders of the lands to be drained and to be assessed for benefits shall sign the petition before it can be acted upon by the drain commissioner, makes no provision for ascertaining or determining what lands are to be drained or what are to be assessed; and, as it cannot be carried into effect for lack of adequate provision in this respect, it is void. Courts are not at liberty to supply defects in legislation, and to do so would be to usurp the power of the legislature. The necessary provision to carry such a law into effect must be found in the law itself, and an attempt by the court to devise rules to help out such a statute would be neither more nor less than an attempt to legislate.

"Under the general drain law, the drain commissioner fixes the assessment district and reviews the assessments in the first instance, and on such review may change the district as originally fixed by him (2 Comp. Laws, §§ 4344, 4340, as amended by Act No. 272, Pub. Acts 1899); and the district as fixed by him may be changed by a board of review. A separate board of review is appointed for each drain, where an appeal is taken from the

commissioner's determination. The drain commissioner cannot lawfully determine what the assessment district shall be until he has reviewed his own determination after notice to the taxpayers interested; and when he has finally determined on such review what the limits of the district are to be, they are open to further review and change by a board to be thereafter appointed. There is no authority to fix the assessment district when the application is made. The authority which may finally determine that is not even then in existence, for a board of review cannot be appointed at that stage of the proceedings, and, until appointed, does not, of course, exist. Act No. 495 attempts to require of the applicants an impossibility, as there is nothing in the law which gives them any authority or power over the subject-matter, except to sign an application. Still, it requires that they obtain the signatures of one-third of all the freeholders of lands which are to be assessed, without making any provision to enable them to comply with that requirement. To impose upon the petitioners the burden of devising means to determine the limits of the assessment district, or to, at their peril, secure at least enough signatures by some other means, would be to impose upon them a burden not authorized or required by the statute. Even the commissioner has no authority or right to determine the assessment district until after the petition is filed with him, and, until it is fixed, even he cannot know who are the freeholders of lands within it. He is not given, at any stage of the proceedings, power to finally determine these matters; but until after the application reaches him, he has no more authority in the premises than a total stranger to the proceedings. This act is therefore incomplete, inoperative, and void."

The respondent, alleging that the holding of the circuit judge was erroneous, has removed the record to this court by writ of certiorari for review.

Act No. 495 of the Local Acts of 1903 is entitled: "An act relative to applications for the locating and establishing of drains within the county of Saginaw." The act provides, as far as it affects the question now before the court, as follows:

"SECTION 1. Before the drain commissioner in the county of Saginaw shall take any action relative to locat-

ing or establishing any drain in said county, there shall be filed with him an application signed by not less than one-third of the freeholders of the lands to be drained thereby and to be assessed therefor," etc.

We think it is apparent, for the reasons given by the learned circuit judge, that it would be impossible to determine what particular number would constitute " one-third of the freeholders of the lands to be drained thereby and to be assessed therefor " at the time of presenting the application to the drain commissioner, or at any time in advance of the final review of the assessment district; and we agree with the trial court that, such being the case, the law is impossible of execution, and therefore inoperative.

It is said, however, that if Act No. 495 of the Local Acts of 1903 is to be held inoperative for the reasons assigned, then, for the same reasons, the general drain law must be held inoperative. We think, however, there is a reasonable distinction between the two enactments. The general drain law provides that the application shall be signed—

" By not less than ten freeholders of the township or townships in which such drain, or the lands to be drained thereby and to be assessed therefor, may be situated; also, that five or more of said signers shall be owners of land liable to an assessment for benefits in the construction of such drain." Act No. 272, Pub. Acts 1899, chap. 3, § 1.

It will be observed that under the general drain law the five signatures required are not of the owners of lands *to be assessed*, but of the owners of lands *liable* to an assessment. As said in 1 Lewis' Sutherland on Statutory Construction (2d Ed.), § 86 :

" It is the bounden duty of courts to endeavor by every rule of construction to ascertain the meaning of, and to give full force and effect to, every enactment of the general assembly not obnoxious to constitutional prohibitions. But if, after exhausting every rule of construction, no sensible meaning can be given to the statute, or if it is so incomplete that it cannot be carried into effect, it must be pronounced inoperative and void."

It is also well settled that statutes must be so construed as to render them constitutional, if such construction is reasonably possible.   Applying these rules, we think the general drain law can be properly so construed as to render it constitutional, while Act No. 495 of the Local Acts of 1903 will not admit of any construction which will render it operative.   The word " liable " does not always have an absolute meaning, implying a fixed and unalterable condition or status.   Several varying definitions of the meaning of the word are given in volume 5 of "'Words and Phrases Judicially Defined," sub nomine " Liable," from which we quote as follows:

" Webster distinguishes the shades of meaning between the word ' liable ' and its synonym ' subject.'   He says: ' " Liable" denotes something external which may befall us; " subject " refers to evils which arise chiefly from internal necessity, and are likely to do so.   Hence, the former applies more to what is accidental; the latter to things from which we often or inevitably suffer.'   An event is liable if its occurrence is within the range of possibility, but the law does not hold a master bound to guard against such an event; and, where the only proof that a certain event was liable to occur was that it did occur, the only thing the evidence tends to show is that it was an event within the range of possibility, and the master was not liable for the injuries.   *Beasley* v. *Transfer Co.*, 148 Mo. 413."

In speaking of the meaning of the words " liability " and " liable," the court in *Cochran* v. *U. S.*, 157 U. S. 286, 296, said:

"We know of no definition of the word 'liability,' either given in the dictionaries or as used in the common speech of men, which restricts it to such as are absolute, or excludes the idea of contingency.   In fact, it is more frequently used in the latter sense than in the former, as when we speak of the liability of an insurer or a common carrier, or the liability to accidents or to errors; and in Webster's dictionary the word 'liable' is said to refer 'to a future possible or probable happening, which may not actually occur; as horses are liable to slip; even the sagacious are liable to make mistakes.' "

See, also, Cent. Dict.; *In re Soltau's Trusts*, L. R. 65 Ch. Div. 631; Black's Law Dict.; *State* v. *Davis*, 12 R. I. 492, 493. Giving the word "liable" in the general drain law the contingent meaning authorized by the authorities cited, so that those liable to an assessment for benefits should mean those who might properly be assessed for benefits, the act would not be subject to the objections raised and now under consideration.

In the case of the local act, however, there is no room for construction. The language is clear, unambiguous, and not subject to different meanings. It is an explicit provision that the application shall be signed by not less than one-third of the freeholders whose lands are actually, as the assessment is finally determined, assessed for benefits, and, as shown by the trial judge, the statute cannot be carried into effect, and is void for that reason. 1 Lewis' Sutherland on Statutory Construction (2d Ed.), § 86; Black on Interpretation of Laws, § 45; 26 Am. & Eng. Enc. Law (2d Ed.), pp. 655, 657; *State, ex rel. Crow,* v. *Railway Co.,* 146 Mo. 155; *Hilburn* v. *Railway Co.,* 23 Mont. 229, 245; *Chaffee's Appeal,* 56 Mich. 244; *People* v. *Lawton,* 30 Mich. 386; *Risser* v. *Hoyt,* 53 Mich. 185, 207; *People* v. *Taylor,* 96 Mich. 576 (21 L. R. A. 287); *State, ex rel. Gaines,* v. *Hudson County Ave. Com'rs,* 37 N. J. Law, 12; *In re Hendricks,* 60 Kan. 796; *State* v. *Rumberg,* 90 N. W. 1055 (86 Minn. 399); *State, ex rel. Wyatt,* v. *Ashbrook,* 154 Mo. 375 (48 L. R. A. 265); *Commonwealth* v. *Bank of Pennsylvania,* 3 Watts & S. (Pa.) 173; *Green* v. *Wood,* L. R. 7 Q. B. 178.

The statute for Ionia county, construed in *Rice* v. *Ionia Probate Judge,* ante, 692, provides for an application to be signed by "the owners of one-half of the value of the lands *liable* to an assessment for benefits," etc., which distinguishes that case from this.

Act No. 237, Pub. Acts 1903, provides as follows:

"SEC. 14. The boards of supervisors of Saginaw and St. Joseph counties, at any session thereof, may from time to time, by resolution, fix and determine such further con-

ditions than those therein set forth to be complied with before all or any contract shall be made or entered into for the construction, improvement, or clearing out of any drain as hereinbefore provided, as to such boards shall seem necessary and proper to protect all persons and townships that may be affected by the proceedings, and no contract or expenditure shall be made or entered into by the drain commissioner or his deputy without first complying with such conditions. Such boards may also in like manner fix the number and kinds of employés the drain commissioner may employ and fix their compensation, and they may require that said commissioner in each year shall report to the boards at their October session, a full and detailed statement and account under oath of the time actually spent by him during the year in the discharge of his duty and for what purpose, the names of all employés and the time actually spent by each and for what purpose their labor was performed, and the amount paid or agreed to be paid each, and also all other expenditures and the names of all persons to whom moneys have been paid and the amount paid each, and the purpose for which said expenditure was made. The boards may allow or disallow any item in whole or in part, any item charged in such report and account, and only so much thereof shall be paid as shall be thus allowed, and no more than one-half of the several items in such report and account shall be paid, or ordered drawn therefor, under the provisions of section six, chapter nine of this act, until such accounts have been thus allowed by the boards of supervisors as in this section provided. Such boards of supervisors of Saginaw and St. Joseph counties, may, by a majority vote of all the members-elect, remove any such drain commissioner or his deputy or both, of Saginaw and St. Joseph counties, and appoint another in his or their place and stead."

It is contended that this act is unconstitutional, as delegating legislative powers to the board of supervisors, and the trial judge was of this opinion. We think that in this holding the learned trial judge was in error. Section 38 of article 4 of the Constitution provides that:

" The legislature may confer upon organized townships, incorporated cities and villages, and upon the board of supervisors of the several counties, such powers of a local, legislative and administrative character as they may deem proper."

141 MICH.—45.

It has been frequently held by this court that the laying out of drains is a mere neighborhood matter. *Dawson* v. *Township of Aurelius*, 49 Mich. 479; *Camp* v. *Township of Algansee*, 50 Mich. 4; *Wallace* v. *Sortor*, 52 Mich. 159; *Barker* v. *Township of Vernon*, 63 Mich. 516; *Hillyer* v. *Township of Jonesfield*, 114 Mich. 644. See, also, *Attorney General, ex rel. Burbank*, v. *Stryker*, ante, 437.

We think that the authority delegated to the board of supervisors by the act in question is clearly authorized by the Constitution itself, and whether the effect of such legislation be good or bad is not for the courts to determine, but for the legislature alone. See, also, *Hurst* v. *Warner*, 102 Mich. 238 (26 L. R. A. 484).

It follows that the respondent was justified in refusing to act under the petition tendered to him, and the judgment of the lower court is reversed, and the peremptory writ of mandamus quashed, with costs to respondent and appellant.

MOORE, C. J., and MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.