CLEVELAND *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—CONDEMNATION PROCEEDINGS—EASE-
MENT—FEE—TRANSPORTATION.
   While street railway corporations are limited in the exercise
   of the power of eminent domain to the taking of an easement,
   a home-rule city may condemn the fee of private property
   for any public use within its powers, especially for a public
   utility for supplying transportation to the municipality and
   its inhabitants (Comp. Laws 1929, §§ 2235, 2236, 11034).

2. SAME—EMINENT DOMAIN—SCOPE OF POWER.
   Where one provision of home-rule city's charter authorized coun-
   cil to take private property for public use within the limita-
   tions of the State Constitution, city was not limited in the
   condemnation of property for subsurface bus terminals for
   improvement of its street railway system to condemnation of
   existing street railway property privately owned as limited
   by another provision of charter (Const. 1908, art. 8, § 23; 1
   Comp. Laws 1929, §§ 2235, 2236; Detroit Charter, title 4,
   chap. 13, § 7; title 8, chap. 1, § 1).

3. INJUNCTION—CONDEMNATION PROCEEDINGS—NECESSITY.
   In suit against city to enjoin condemnation proceedings the
   question of necessity is not open to the court since it is one
   for the jury in the condemnation proceedings (Const. 1908,
   art. 13, §§ 1, 2).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 18 Am. Jur., §§ 114, 115, 121; 55 Am. Jur., Urban Transporta-
tion, §§ 6, 44 *et seq.*
[3] 18 Am. Jur., Eminent Domain, § 334.
[5] 20 Am. Jur., Evidence, §§ 16 *et seq.*
[6] 18 Am. Jur., Eminent Domain, §§ 46–48, 333.
[7] 18 Am. Jur., Eminent Domain, § 64.
[8] 18 Am. Jur., Eminent Domain, § 110.
[8] Right to condemn property in excess of needs for public purposes.
68 A.L.R. 837.
[9] 18 Am. Jur., Eminent Domain, § 41.
[9] Eminent Domain: Combination of public and private uses or
purposes. 53 A.L.R. 9.
[10] 18 Am. Jur., Eminent Domain, § 329.
[11] 30 Am. Jur., Judgment, § 197.

4. EMINENT DOMAIN—SUBSURFACE BUS TERMINALS—FEE—SKY
RIGHTS—PRIVATE USE.

Where condition of soil was such that construction of subsurface
bus terminals had to be done by open cut or caisson method
rather than tunneling under existing buildings, it could not
be held as a matter of law that it was unnecessary to acquire
the entire fee and the so-called sky rights, notwithstanding
that after structure was erected, space above the first floor
level might be leased to private businesses as it is neither a
possible prerequisite to, nor capable of conclusion under, con-
demnation proceedings that arrangements be made between
the parties for use of surface and subsurface for support of
buildings occupying space above the surface (U. S. Const.
Am. 14; Mich. Const. 1908, art. 2, § 16).

5. EVIDENCE—JUDICIAL NOTICE—DIVISION OF A LOT—SURFACE—SKY
AREA.

Judicial notice is taken of the fact that while the surface of a
lot may be divided into two parts and each used independently
of the other, a like horizontal division of the sky space above
may not be made without dependence upon the surface or
subsurface.

6. EMINENT DOMAIN—PUBLIC USE—JUDICIAL QUESTION.

The question of whether the proposed use to be made of property
sought to be condemned is a public use is a judicial one.

7. SAME—TERMINALS FOR STREET RAILWAY SYSTEM—PUBLIC USE.

The use of property for terminals for municipally-owned street
railway system is a public use within the meaning of statute
authorizing condemnation proceedings (1 Comp. Laws 1929,
§§ 2235, 2236).

8. SAME—MUNICIPAL CORPORATIONS—EXCESS PROPERTY—PRIVATE
USE.

In acquiring property for public use, it is not permissible for a
home-rule city to take additional property not necessary for
that public use for private purposes.

9. SAME—INCIDENTAL USE OF PORTION FOR PRIVATE BENEFIT.

Condemnation proceedings for the acquisition of so much and no
more property than is necessary for a permissible public use
will not be defeated by the mere fact that an incidental private
benefit or use of some portion of such property will result.

10. SAME—SUSPICION OF INTENDED PRIVATE USE.

Property owners' suspicion, in the absence of proof, that home-
rule city will, after acquisition of the property in condemna-

tion proceedings, divert some part thereof to private use, is not sufficient to void the proceedings (Const. 1908, art. 8, § 23; 1 Comp. Laws 1929, §§ 2235, 2236; Detroit Charter, title 4, chap. 13, § 7; title 8, chap. 1, § 1).

11. Judgment—Res Judicata—Necessity to Condemn Land—Injunction.

The unappealed denial of defendant home-rule city's motion to dismiss bill to enjoin condemnation proceedings for subsurface bus terminal was not *res judicata* of defendant's right or need to take more than an easement.

12. Municipal Corporations—Street Railway System—Subsurface Bus Terminals—Rapid Transit System—Elections.

Improvement of existing street railway system by way of construction of subsurface bus terminals so as to enable system to furnish more rapid transportation would not transform such system into a rapid transit system so as to remove it from the jurisdiction of existing street railway commission and place it under that of the rapid transit commission, action necessitating electorate's approval (Detroit Charter, title 4, chap. 24).

13. Same—Investments in Business Enterprise—Electors—Subsurface Bus Terminals.

Charter provision requiring electorate's approval of municipal investments in business enterprise in excess of 10 cents per capita does not apply to subsurface bus terminals for public transportation system, as investment in such project is for a public purpose and not a business enterprise.

14. Same—Resolutions—Condemnation Proceedings—Specification of Incidental Uses.

Home-rule city council's resolution authorizing condemnation of private property for use as bus terminal sites and improvement of street railway facilities was not defective because of failure to specify incidental uses to which plaintiff property owners, seeking to enjoin the condemnation proceedings, suspect the property will be put.

Appeal from Wayne; Brennan (John V.), J. Submitted April 9, 1948. (Docket No. 48, Calendar No. 43,868.) Decided September 8, 1948.

Bill by Cynthia Mills Cleveland against City of Detroit and others to restrain condemnation of land.

Jack Bookstein and others intervene as parties plaintiff. Cross bill by F.P.E. Noteholders Corporation, a Michigan corporation, against other defendants for injunction restraining condemnation. Decree for defendant City of Detroit. Plaintiff, intervening plaintiffs, and cross-plaintiff appeal. Affirmed.

*William Alfred Lucking,* for plaintiff.

*Raymond J. Kelly,* Corporation Counsel, and *Clarence E. Page* and *Helen W. Miller,* Assistants Corporation Counsel, for defendant City of Detroit.

*Lucking, Van Auken, Schumann & Greiner,* for cross-plaintiff.

DETHMERS, J. Plaintiff, cross-plaintiff and intervening plaintiffs, hereinafter called plaintiffs, own property which the defendant city sought to acquire by condemnation for the construction thereon of subsurface bus terminals for the improvement of its street railway system. Plaintiffs, by this suit, seek to enjoin prosecution of the condemnation proceedings and appeal from a decree for defendant dismissing the bills of complaint.

Do Michigan statutes and public policy permit condemnation of the fee for the city's street railway system? It is contended that the city, in the operation of its street railway system, is in the position of a street railway corporation, which, under the provisions of 3 Comp. Laws 1929, § 11034 (Stat. Ann. § 22.433) must, when seeking to acquire property by condemnation, proceed in the same manner as provided in the general railroad law and that the latter permits taking only an easement and not the fee. This overlooks the rights of defendant as a city to provide in its charter for the acquisition by

condemnation of private property for any public use within its powers, and specifically for a public utility for supplying transportation to the municipality and its inhabitants. 1 Comp. Laws 1929,. §§ 2235, 2236 (Stat. Ann. §§ 5.2078, 5.2079). These statutes, so far from limiting the city to the acquisition of an easement, clearly contemplate taking the fee.

Does the defendant city's charter avail itself of the permissive provisions of the above sections of the so-called Michigan home-rule act so as to provide for condemning private property for motor bus. terminal sites to be used in connection with its street railway system? Cited are the provisions of title: 4, chap. 13, § 7, of the charter, authorizing the street. railway commission to condemn existing street railway property privately owned. It is urged that under the rule *"expressio unius est exclusio alterius"* these provisions permit condemnation of such existing railway property to the exclusion of condemnation of other property for the extension of existing facilities. It is to be observed, however, that title 8,. chap. 1, § 1, of the charter provides as follows:

"The council of the city of Detroit is hereby authorized to take private property for the use and benefit of the public within the limitations of the State Constitution, and to institute and prosecute proceedings for that purpose. Provided, that this chapter shall not apply to cases where proceedings. have already been instituted under any laws in force prior to the taking effect of this charter; and provided, further, that nothing herein contained shall be held to abridge the right of said city to take private property for the use and benefit of the public under other acts to which resort may be had for said purpose."

Proceedings by the defendant city under this section are not barred by the specific provisions of title:

4. Rather, an alternative is afforded. See *Union School District of the City of Jackson* v. *Starr Commonwealth for Boys, ante,* 165.

Article 8, § 23, Michigan Constitution of 1908, empowers cities to own and operate utilities of the type here involved. There can be no doubt that the use of property for transportation of the public is a public use thereof. *City of Traverse City* v. *Township of Blair,* 190 Mich. 313. The statutory and charter provisions above noted authorize acquisition by condemnation for such permissible public use.

Plaintiffs contend that an easement is all the defendant needs for the purposes of such bus terminals and that the taking of the fee would represent an excess taking beyond that required for the avowed public purpose. Article 13, §§ 1, 2, Michigan Constitution of 1908, vests in a jury of 12 freeholders the function of determining the necessity of taking private property for public use. *Sutton* v. *Village of Morenci,* 202 Mich. 91; *In re Owen and Memorial Parks in City of Detroit,* 244 Mich. 377 (61 A. L. R. 190). The trial court properly held that the question of necessity, being one for the jury in condemnation proceedings, is not open to the court in an action brought to enjoin such proceedings.

It is plaintiffs' position that the proposed bus terminals will require use of only the subsurface and such portions of the surface as are necessary for ingress and egress or, at the most, the subsurface, surface and space above the surface to a height of not more than one story, leaving the so-called sky rights above the first story unnecessary to the contemplated public use; that the properties in question are in the heart of the Detroit business district, where lands have a value consisting not only of surface and subsurface uses, but also that attaching to the use of the space above for buildings many stories in

height; that defendant intends to use the upper space areas, not necessary for the projected public use, for private purposes, such as leasing to private business enterprises; that we should, therefore, hold that the taking of the entire fee and of the sky rights is, as a matter of law, not necessary for public purposes. Testimony for defendant is that the condition of the soil is such that the open cut or caisson method rather than tunneling under existing buildings on plaintiffs' properties would be necessary. It is obvious that, after existing buildings have been razed and excavations completed for subsurface terminals, the construction thereafter by plaintiffs of buildings in the space above that which they claim to be sufficient for the intended public purposes would require the use by plaintiffs of some part of the surface and subsurface acquired by the defendant as support for such buildings. This, in turn, would necessitate an arrangement therefor between the parties which is neither a possible prerequisite to, nor capable of conclusion under, condemnation proceedings. This alone is sufficient to preclude a holding that, as a matter of law, defendant seeks acquisition of property in excess of that necessary for the contemplated public use, and leaves it still a question of fact for a jury of freeholders in condemnation proceedings. This is true, even though, as suggested in a brochure prepared by defendant's planning engineers, some of the surface might, after completion of the terminals, be used incidentally for buildings to be leased by defendant to private businesses.

Plaintiffs claim that the 14th Amendment to the Constitution of the United States and article 2, § 16, Michigan Constitution of 1908, will be violated if defendant is permitted to take the fee and the sky rights above the first story level, because, as it is asserted, such taking would be excessive and not for

a public purpose. In support thereof plaintiffs cite cases involving attempts by governmental units to acquire lands greater in surface area than that need-ed for the purported public purpose. Plaintiffs suggest the applicability of those cases on the theory that the public taking of private property for public use can be excessive vertically as well as horizontally. The difficulty with plaintiffs' theory on that score is a practical one, in that, even in this modern, scientific day and age it has not yet .been demonstrated that real estate can be sliced horizontally as well as vertically into segments of independent use and ownership. The surface of a lot may well be divided into two parts and each used independently of the other. That a like division can be made of the surface from the sky space above, for the use of the latter for structural purpose, without dependence upon the surface or subsurface, does not yet appear.

The question of whether the proposed use is a public use is a judicial one. We hold that use of property for terminals for defendant's street railway system is a public use. The use thus having been judicially determined to be public, the question of the necessity of acquiring certain property for that public use is one for a jury of freeholders. In acquiring property for public use it is not permissible for the city to take additional property not necessary for that public use for private purposes. However, condemnation proceedings for the acquisition of so much and no more property than is necessary for a permissible public use will not be defeated by the mere fact that an incidental private benefit or use of some portion of such property will result. *Berrien Springs Water Power Co.* v. *Berrien Circuit Judge,* 133 Mich. 48 (103 Am. St. Rep. 438) ; *Dyer* v. *Township of Burns,* 228 Mich. 513.

There is no proof that defendant's space needs for the intended public use will not exceed those alleged by plaintiffs, or that any part of the property sought to be acquired will be used for a nonpublic purpose. The resolution of defendant's common council, authorizing condemnation, expresses as its sole purpose the projected use for bus terminals and improvement of its street railway system. It constitutes the defendant's only official action in relation to the acquisition and future use of the properties. The mentioned brochure commits neither the defendant nor anyone else to any use of the property; plaintiffs' suspicions, thereby induced, that defendant will, after acquisition of the property, divert some part thereof to private use, do not suffice to void the proceedings. *Dyer* v. *Mayor, Etc., of City of Baltimore,* 140 Fed. 880.

There is no merit to the contention that the unappealed from order denying defendant's motion to dismiss before trial is *res judicata* of defendant's right or need to take more than an easement. See *Bennett* v. *Nichols,* 12 Mich. 22; *Patterson* v. *Hopkins,* 23 Mich. 541.

Reliance is had on *In re Acquisition of Land for Recreational Purposes,* 319 Mich. 212, in support of the proposition that ownership by defendant of other lands suitable for subsurface bus terminals may be considered as grounds for enjoining the condemnation proceedings. The case, in fact, holds that such ownership is a matter to be presented to and considered by the jury in the condemnation proceedings, in determining the question of necessity.

Point is made of the provisions of title 4, chap. 24, of defendant's charter for the creation of a rapid transit commission, and preparation by it of a plan for the construction and operation of a rapid transit system, which plan shall not be put into effect until approved by the electors of the city. The fact that

the proposed improvements in the nature of subsurface bus terminals will have the effect of enabling the present street railway system to furnish more rapid transportation does not suffice to transform the street railway system, as thus improved, into a rapid transit system so as to remove it from the jurisdiction of the existing street railway commission and place it under that of the rapid transit commission, and thus make the project a plan requiring the prior approval of the electors.

Plaintiffs cite title 3, chap. 1, § 12 (h), of the charter, which denies to the council the power to engage in any business enterprise requiring an investment of money in excess of 10 cents per capita unless first approved by three-fifths of the electors voting on such proposition. Plaintiffs urge that the project here contemplated will require an investment in money in excess of that limit and that, therefore, it cannot be undertaken because it has not been submitted to the electors. Statutes and charter provisions hereinbefore considered expressly empower the city to own and use property for the operation of a public transportation system, a public purpose and not a business enterprise, for which, as already noted, the acquisition of privately owned property by condemnation is permissible.

Inasmuch as the resolution of the common council specified that the property was to be acquired for motor bus terminal sites and improvement of its street railway facilities, the resolution cannot be said to be defective because it did not specify the incidental uses to which it is suspected by the plaintiffs that the property will be put.

Decree dismissing the bills of complaint affirmed, with costs to defendant city.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.