LAKEHEAD PIPE LINE COMPANY, INC., *v.* DEHN.

1. EMINENT DOMAIN—PIPE LINES—OIL—STATUTES.

The statute regulating the business of transporting petroleum products through pipe lines and authorizing condemnation of private property for such use was not intended to be confined to the regulation of intrastate transportation of such products, where there was not an unequivocal declaration thereof within the statute and recourse to the title of the act discloses no such limitation there (CL 1948, § 483.1 *et seq.*).

2. STATUTES—CONSTRUCTION—PURPOSE TO BE ACCOMPLISHED.

A statute must be construed in the light of the purpose sought to be accomplished thereby, the primary purpose of construction being to ascertain and give effect to the intention of the legislature.

3. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES—COURTS—LEGISLATURE.

The proper construction of a statute is a judicial function, not a usurpation of legislative power.

4. STATUTES—CONSTRUCTION—DOUBTFUL MEANING.

Language of doubtful meaning in a statute must be given a reasonable construction, looking to the purpose subserved thereby, its occasion and necessity, to the end that the purpose will be effected, if possible, the spirit prevail over the strict letter, injustice prevented and absurd consequences avoided.

REFERENCES FOR POINTS IN HEADNOTES

[2] 50 Am Jur, Statutes § 223.
[3] 50 Am Jur, Statutes § 228.
[4] 50 Am Jur, Statutes §§ 303–308, 377.
[6, 7] 18 Am Jur, Eminent Domain § 37.
[6, 7] Public benefit or convenience as distinguished from use by the public as ground for the exercise of eminent domain. 54 ALR 7.
[9] 13 Am Jur, Corporations § 1146; 11 Am Jur, Commerce §§ 18, 20.

5. EMINENT DOMAIN—PIPE LINES—INTERSTATE AND INTRASTATE COMMERCE.

A pipe-line company, engaged in interstate and foreign commerce, which was constructing a pipe line across this State to be equipped to serve refineries within this State, if necessary, was entitled to proceed under act regulating pipe-line companies, to acquire, by condemnation proceedings, property necessary for the public use claimed; there being both a State and National purpose served (CL 1948, § 483.1 *et seq.*).

6. SAME—PUBLIC USE—INCIDENTAL PRIVATE BENEFIT.

Condemnation proceedings for acquisition of private property for a permissible public use will not be defeated by the mere fact that an incidental private benefit or use of some portion of such property will result.

7. SAME—PIPE LINES—PARENT AND SUBSIDIARY CORPORATIONS—COMMON CARRIERS.

Fact that a Canadian company owns 33% of the stock of parent company wholly owning a Minnesota corporation of which plaintiff Delaware corporation is a wholly-owned subsidiary, and might receive some benefit from profits of plaintiff as a common carrier of petroleum products across this State would not bar plaintiff from exercising the right of eminent domain as conferred upon pipe-line companies by statute, since the private benefit is incidental to the main purpose (CL 1948, § 483.1 *et seq.*).

8. CARRIERS—PIPE LINES—EMINENT DOMAIN—REMEDY.

The State is not without remedy to compel a foreign corporation constructing pipe line across this State which had been authorized to do so by the State public service commission and had either complied with or agreed to comply with the orders of the commission to function as a common carrier once the pipe line was constructed, in part through the exercise of the power of eminent domain conferred by statute upon pipe-line companies which operate as common carriers (CL 1948, § 483.1 *et seq.*).

9. SAME—PIPE LINES—CORPORATIONS—QUO WARRANTO.

The operations of a corporation engaged in interstate and intrastate commerce within this State as a common carrier by pipe line are subject to a certain measure of authority by the State in addition to *quo warranto* proceedings to compel it to fulfill its charter obligations.

Appeal from Bay; Leibrand (Karl K.), J. Submitted April 7, 1954. (Docket No. 26, Calendar No. 46,071.) Decided June 7, 1954.

Petition by Lakehead Pipe Line Company, Inc., a Delaware corporation, for condemnation of right-of-way across land owned by Arthur F. Dehn and others. Judgment for plaintiff. Defendants appeal. Affirmed.

*Hand & Hand* (*Butzel, Eaman, Long, Gust & Kennedy, Thomas G. Long* and *William M. Saxton,* of counsel), for plaintiff.

*F. Norman Higgs,* for defendants.

CARR, J. This case involves the right of Lakehead Pipe Line Company, Inc., hereinafter referred to as the plaintiff, to acquire by condemnation the right-of-way across land in Bay county, owned by defendants as tenants in common, for the construction of a pipe line for the transportation as a common carrier of petroleum products. Plaintiff was organized in 1949 under the laws of the State of Delaware. Among other purposes set forth in its articles of incorporation is the construction, operation and maintenance of pipe lines for the transportation of oil, together with storage tanks, pumping stations and other facilities used in connection therewith. The Michigan public service commission, by order dated March 19, 1953, granted plaintiff the right to file its certificate of incorporation in this State and to issue securities. Thereafter it was admitted to do business in Michigan.

Plaintiff is presently engaged in the construction of a welded steel pipe line beginning on the boundary line between Wisconsin and Michigan at a point near Ironwood, thence extending across the upper

peninsula to the Straits of Mackinac and in a southeasterly direction to a point on the international boundary in the St. Clair river, a short distance south of the city of Port Huron. When completed it will form a part of a system for the transportation of petroleum products from Redwater, Alberta, Canada, to refineries located in or near the city of Sarnia in Canada, and to and from intermediate points. The stock in plaintiff corporation is owned by the Lake Superior Pipe Line Corporation, a Minnesota corporation, a subsidiary of the Interprovincial Pipe Line Company, a Canadian corporation. The last named company owns the pipe line from Redwater to the international border near Neche, North Dakota, and also the portion extending from the point in the St. Clair river south of Port Huron, above mentioned, to the refineries. The portions of the system in this country are owned by plaintiff, the Michigan section being approximately 540 miles in length.

In bringing the instant proceeding plaintiff relied on PA 1929, No 16, as amended (CL 1948, § 483.1 et seq. [Stat Ann and Stat Ann 1953 Cum Supp § 22.1341 et seq.]). In its petition, filed in circuit court on September 11, 1953, it averred compliance with the provisions of the statute, claimed that the right-of-way across the land of defendants was necessary for the public use in the construction of the pipe line, and that it had been unable to acquire such right-of-way. An order was sought appointing 3 qualified commissioners to determine the necessity for the taking and use of the easement and the amount of the damages to be paid.

The answer to the petition, in substance, denied plaintiff's right to maintain the proceeding. Testimony relating to the issues raised was taken before the circuit judge, who came to the conclusion that defendants' objections to the jurisdiction of the

court were not well founded. Plaintiff's corporate organization, the nature of the project in which it was engaged, and its compliance generally with the requirements of the statute were shown. Among other matters, it appeared that plaintiff had made application to the public service commission of the State for approval of the location and construction of the pipe line in question, and that after a hearing, at which certain intervenors contested the granting of the approval sought, an order was entered authorizing plaintiff to construct, operate and maintain as a common carrier a 30-inch oil pipe line as planned. The use of two 20-inch pipes across the Straits of Mackinac was approved, and the commission further directed that plaintiff should comply in all respects with PA 1929, No 16, above cited.

In accordance with his conclusion, the circuit judge entered an order appointing commissioners to determine the necessity of plaintiff's obtaining an easement across the land of defendants and to determine the compensation and damages payable therefor. On the 6th of October, 1953, proofs were taken before the commissioners, from which it appeared that plaintiff intended to operate the pipe line as a common carrier of petroleum products, that negotiations with different parties in Michigan had been conducted for the delivery of oil to Michigan refineries, and that the establishment of "take-off points" for other purchasers requesting delivery in this State was contemplated. Testimony was offered tending to establish that the construction of the pipe line and its operation in the manner intended would result in industrial benefits to the areas concerned. Plaintiff's president testified that in addition to delivering oil to refineries and other purchasers in Michigan the company would be prepared to transport Michigan oil between points in this State, or between points herein and consignees outside of

the State, if available therefor. It may be noted in this connection that on the hearing before the circuit judge on the jurisdictional questions raised by defendants the assistant secretary of the plaintiff testified that oil would be transported through the pipe line in intrastate commerce if future production in this State rendered such service possible.

Based on the proofs taken before them, the commissioners concluded that a public necessity existed for the taking of the easement across the property of the defendants, and that a public necessity likewise existed for making the proposed improvement. The total amount of compensation and damages was fixed at $600, divided equally among the owners of the property. On behalf of defendants objections to the confirmation of the report were submitted. It was the position of defendants that plaintiff was not authorized by statute to condemn the right-of-way, that the operation of the pipe line could not be controlled by the Michigan public service commission, that the contemplated business was wholly interstate and foreign in character, and as such not subject to State regulation, and that plaintiff was seeking to take property by condemnation for a private purpose. The circuit judge determined the issues in favor of plaintiff and entered an order accordingly. Defendants have appealed, raising in this Court substantially the same issues presented by their objections to the order of confirmation.

On behalf of appellants it is argued that the act of 1929, above cited, does not authorize the plaintiff to condemn a right-of-way across their property. Emphasis is placed on the fact that sections 1, 3 and 4, of the statute contain the expression "within the limits of this State." It is argued that the phrase must be construed as limiting the operation of the act in question to intrastate operations exclusively.

Counsel for defendants in his brief expresses the argument as follows:

"It is the position of respondents that the repeated emphasis on the phrase 'within the limits of the State' can mean only that the legislature intended the act to cover transportation from point in the State of Michigan to another point in the State of Michigan, *i.e.* intrastate transportation."

The contention of defendants presents an issue of statutory interpretation. The general purpose of Act No 16 is indicated by its title, which reads as follows:

"An act to regulate the business of carrying or transporting, buying, selling or dealing in crude oil or petroleum or its products, through pipe lines; to authorize the use of public highways and the condemnation of private property; to regulate the purchase and storage of crude oil or pretroleum; to provide for the control and regulation of all corporations, associations and persons engaged in such business, by the Michigan public utilities commission; to define the powers and duties of the commission in relation thereto; and to prescribe penalties for violations of the provisions hereof."

It will be noted that the phrase on which appellants rely does not appear in the title. The provisions in the body of the act are in keeping with the general purpose set forth therein. The matter of control by the public utilities commission (now the Michigan public service commission) is emphasized, and the obligations relating to the public service imposed on those who seek to take advantage of the enabling provisions of the enactment are clearly expressed. Sections 1, 2, 5 and 6, are of particular significance in determining the legislative intent. Said sections read as follows:

"Sec. 1. Every corporation, association or person now or hereafter exercising or claiming the right to carry or transport crude oil or petroleum, or any of the products thereof, by or through pipe line or lines, for hire, compensation or otherwise, or now or hereafter exercising or claiming the right to engage in the business of piping, transporting or storing crude oil or petroleum, or any of the products thereof, or now or hereafter engaging in the business of buying, selling or dealing in crude oil or petroleum, within the limits of this State, shall not have or possess the right to conduct or engage in said business or operations, in whole or in part, as above described, or have or possess the right to locate, maintain, or operate the necessary pipe lines, fixtures, and equipment thereunto belonging, or used in connection therewith, concerning the said business of carrying, transporting or storing crude oil or petroleum as aforesaid, on, over, along, across, through, in or under any present or future highway, or part thereof, or elsewhere, within this State, or have or possess the right of eminent domain, or any other right or rights, concerning said business or operations, in whole or in part except as authorized by and subject to the provisions of this act, except, further, and only such right or rights as may already exist which are valid, vested, and incapable of revocation by any law of this State or of the United States." CL 1948, § 483.1 (Stat Ann § 22.-1341).

"Sec. 2. For the purpose of acquiring necessary right-of-ways, every such corporation, association or person is hereby granted the right of condemnation by eminent domain, and the use of the highways in this State, for the purpose of transporting petroleum by pipe lines, and the location, laying, constructing, maintaining and operations thereof; and such condemnation proceedings shall be conducted in accordance with the same procedure and in the same manner as is provided by the laws of this State for the condemnation of right-of-ways

by railroad companies." CL 1948, § 483.2 (Stat Ann § 22.1342).

"Sec. 5. Every corporation, association or person, now or hereafter engaged in the business of carrying or transporting crude oil or petroleum, or any of the products thereof, for hire or compensation or otherwise, by pipe line or lines, within this State, shall be a common carrier thereof as at common law, and no such common carrier shall allow or be guilty of any unjust or unlawful discrimination, directly or indirectly, in favor of the carriage, transportation, storage or delivery of any crude, stock or storage oil, or any products thereof, in its possession or control, or in which it may be interested, directly or indirectly." CL 1948, § 483.5 (Stat Ann § 22.-1345).

"Sec. 6. Before any corporation, association or person shall have, possess, enjoy or exercise the right of eminent domain, right-of-way, right to locate, maintain, or operate pipe lines, fixtures or equipment appurtenant thereto, or used in connection therewith, as authorized by the provisions of this act, or shall have, possess, enjoy or exercise any right conferred by this act, every such corporation, association or person, shall file in the office of the Michigan public utilities commission, an explicit authorized acceptance of the provisions of this act; and in cases of pipe lines a plat showing in detail the points within this State between which, and the route along which, the trunk line or trunk lines are proposed to be constructed, the intended size and capacity thereof, and the location and capacity of all pumping stations, gate valves, check valves and connections and appliances of all kinds used, or to be used, on said trunk line or lines; and upon demand of the commission the proper party or parties, as required by said commission, shall promptly file a plat showing in detail all the lines owned and operated by them respectively, with full and explicit information as to their capacity, size and location,

and the valves and connections, of all kinds, respectively required or used in the operation thereof." CL 1948, § 483.6 (Stat Ann § 22.1346).

May it be said that the language of the act justifies the conclusion that the legislature had in mind merely the construction, operation and maintenance, of pipe lines for the transportation of petroleum products solely between points within the State? The provisions of the statute, read in their entirety, do not suggest such limitation. The act contains no express and unequivocal declaration thereof. We think that, if the legislature had in mind merely the transportation of oil between points within this State, it would have indicated such intent in unambiguous terms. In cases of doubtful meaning recourse to the title is permissible. *Reithmiller* v. *People,* 44 Mich 280; *Mason* v. *Perkins,* 73 Mich 303; *Kalee* v. *Dewey Products Company,* 296 Mich 540, 545.

This Court has repeatedly recognized and declared the principles to be observed in the interpretation of a legislative enactment. A statute must be construed in the light of the purpose sought to be accomplished thereby. *Geraldine* v. *Miller,* 322 Mich 85, 96. Quite frequently light is thrown on such purpose by recourse to the situation obtaining at the time of enactment, viewed from the standpoint of possible, or probable, future developments in a given field. In *City of Grand Rapids* v. *Crocker,* 219 Mich 178, 182, it was said:

"There seems to be no lack of harmony in the rules governing the interpretation of statutes. All are agreed that the primary one is to ascertain and give effect to the intention of the legislature. All others serve but as guides to assist the courts in determining such intent with a greater degree of certainty."

The following summarization in *Webster* v. *Rotary Electric Steel Company,* 321 Mich 526, 531, is also in point:

"Although we may not usurp the law-making function of the legislature, the proper construction of a statute is a judicial function, *Albert* v. *Gibson,* 141 Mich 698, and we are required to discover the legislative intent, *People* v. *Marxhausen,* 204 Mich 559 (3 ALR 1505); *Miles, ex rel. Kamferbeek,* v. *Fortney,* 223 Mich 552; *Gwitt* v. *Foss,* 230 Mich 8; and *People* v. *Gould,* 237 Mich 156.

"Where, however, the language is of doubtful meaning, a reasonable construction must be given, looking to the purpose subserved thereby. *Attorney General* v. *Bank of Michigan,* Harr Ch (Mich) 315; *Bennett* v. *Michigan Pulpwood Co.,* 181 Mich 33 [40]. Its occasion and necessity are matters of judicial concern, *Sibley* v. *Smith,* 2 Mich 487, and *Bennett* v. *Michigan Pulpwood Co., supra,* and its purpose should be effected if possible, *People* v. *Stickle,* 156 Mich 557. Its spirit and purpose should prevail over its strict letter, *Stambaugh Township* v. *Iron County Treasurer,* 153 Mich 104. Injustice in its application should be prevented, *Attorney General, ex rel. Common Council of the City of Detroit,* v. *Marx,* 203 Mich 331, and absurd consequences avoided, *Attorney General* v. *Railway,* 210 Mich 227."

See, also, *In re Petition of City of Detroit for Condemnation of Lands for Airport,* 308 Mich 480 (1 Av 1161); *Van Antwerp* v. *State,* 334 Mich 593.

Construing the act in question here in accordance with principles recognized in the above cases, and in others of similar import, we are brought to the conclusion that it was not the intention of the legislature to limit the scope of PA 1929, No 16, to persons, associations and corporations, engaged wholly in intrastate commerce, that is, to the transportation of petroleum products through pipe lines between points in Michigan. We think that such interpreta-

tion is not consistent with the general purpose indicated by the legislature in the title of said act and in the provisions thereof read in their entirety. We may assume that it was intended to recognize and deal with the problem as it then appeared. Acceptance of the interpretation for which appellants contend would result in defeating, in part at least, the object sought to be accomplished. It is our conclusion that plaintiff was entitled to proceed under the act in question to acquire property necessary for the public use claimed.

Appellants also urge that the construction and operation of the pipe line in question here is not a purpose for which the State may grant the power of eminent domain. It is insisted in substance that plaintiff contemplates primarily the transporting of oil from Canadian oil fields to refineries in or near Sarnia in the province of Ontario, that such transportation should be regarded as Canadian commerce, and that facilitating the accomplishment of such purpose is not within the powers of the State. As before noted, however, plaintiff proposes to deliver oil to Michigan refineries and other purchasers in this State. That such transportation and delivery in interstate commerce will result in benefits to Michigan is scarcely open to question. It is further in evidence that plaintiff holds itself out, and will continue to do so, as ready, willing and able, to transport oil in intrastate commerce if and when such business is offered to it. Whether the production of crude oil in Michigan in the future will increase to such an extent as to require such method of transportation is not susceptible of definite proof. Presumably, however, the legislature in the enactment of the statute under which plaintiff is seeking to proceed had such possibility in mind.

Appellants cite *Trombley* v. *Humphrey*, 23 Mich 471 (9 Am Rep 94), in which it was held that a stat-

ute of this State in terms authorizing the condemnation of land to be turned over to the Federal government for the erection of a lighthouse was unconstitutional on the theory that the sovereign power of eminent domain may not be exercised by a State solely for the benefit of the Federal government. In the instant case, however, a different situation is presented. By the statute of 1929 the legislature of Michigan did not undertake to authorize condemnation proceedings other than for a public use benefiting the people of the State of Michigan. That was the basis for legislative action. It is doubtless true that in addition to such purpose interstate and foreign commerce, subject to regulation and control by the Federal government, is also benefited. The situation in this respect is analogous to that in *Detroit International Bridge Co.* v. *American Seed Co.*, 249 Mich 289. Several of the questions raised by appellants on this appeal were considered by the Court in that decision. There the plaintiff Bridge Company was organized under PA 1921, No 84, for the purpose of constructing, owning and operating, a highway bridge across the river from Detroit, Michigan, to Sandwich, Ontario. The right of eminent domain was claimed under part 2, chapter 1, § 2, of said act as amended by PA 1925, No 232, and PA 1927, No 335.* It was urged by the defendant Seed Company that the State could not lawfully delegate to the plaintiff the exercise of the power of eminent domain because the bridge, being for commerce with another nation, was serving a Federal purpose only. In rejecting the argument, it was said in part (p 298):

"The bridge is not exclusively a National or State purpose. The Federal government is interested in

---

* Said section as amended by PA 1929, No 267, appears as CL 1929, § 9984.

it by virtue of its constitutional authority over navigation, interstate and foreign commerce and post roads. But it did not originate, adopt, nor aid the project. Its function is merely supervisory and permissive. The State is interested in the extension of its highway system to the State boundary in the Detroit river, an indubitably State purpose, and is the source of the power to construct the bridge. * * *

"If, because of control over foreign commerce by congress, the bridge should be held a purely National purpose, in the establishment of which the eminent domain of the State cannot be employed, then, by the same token, the State could not use the power to complete any road to the State line beyond the needs of intrastate traffic nor authorize its use by a transportation company engaged in purely interstate commerce. The statement of the proposition seems to carry its own answer.

"We think the project is so plainly both a State and National purpose as to authorize condemnation of lands for it by either government."

Unquestionably the construction of the bridge benefited the people of Michigan. A like result may be anticipated in the case at bar from the construction, maintenance and operation, of the pipe line in question. The language, above quoted, is applicable to the situation now before us. The argument of appellants is answered by the decision in the case cited.

It appears from the record that the Imperial Oil Company of Canada owns approximately 33% of the stock of the Interprovincial Pipe Line Company. To what extent, if at all, it exercises control over said transportation company, or over the plaintiff, does not appear. It is in evidence, however, that Imperial is a producer of oil in the Alberta fields, and that it also owns refineries in Sarnia. Undoubtedly petroleum products of the Imperial Oil

Company will be transported by the plaintiff as a common carrier through the pipe line that it is constructing. It is not disputed that payment for such transportation will be made in like manner as by other shippers. Appellants suggest, however, that the situation results in giving to Imperial ultimate interest in plaintiff's profits, and that part of the purpose of the construction and operation of the pipe-line system is the transportation of Imperial's oil. This is said to be a private purpose, and appellants seek to invoke the rule that the power of eminent domain may not be granted by the State for such purpose.

In *Shizas* v. *City of Detroit,* 333 Mich 44, an act of the legislature, in terms authorizing cities to acquire and operate automobile parking facilities for the use of the public, specifically provided that not more than 25% of the total floor area of the entire parking facility might be leased for purposes other than for the use of motorists. It was held that the purpose sought to be accomplished was partly private and partly public, that under the general rule private property may not be taken under the power of eminent domain for other than a public use, and that the statute was void. It will be noted that in the *Shizas Case* the public and private purposes were so interwoven that they could not be separated, nor could it be said that the latter was merely incidental to the former. The difference between the situation under the statute involved and that existing in *Cleveland* v. *City of Detroit,* 322 Mich 172, was recognized. In the *Cleveland Case* it was said (p 179):

"The question of whether the proposed use is a public use is a judicial one. We hold that use of property for terminals for defendant's street railway system is a public use. The use thus having

been judicially determined to be public, the question of the necessity of acquiring certain property for that public use is one for a jury of freeholders. In acquiring property for public use it is not permissible for the city to take additional property not necessary for that public use for private purposes. However, condemnation proceedings for the acquisition of so much and no more property than is necessary for a permissible public use will not be defeated by the mere fact that an incidental private benefit or use of some portion of such property will result. *Berrien Springs Water-Power Co.* v. *Berrien Circuit Judge,* 133 Mich 48 (103 Am St Rep 438); *Dyer* v. *Township of Burns,* 228 Mich 513."

Doubtless the Imperial Oil Company will be benefited by the fact that the pipe-line system provides a method for transporting its oil to the refineries. It cannot be said, however, that, because of such situation, the plaintiff is seeking to exercise the power of eminent domain for a private purpose. The private benefit, if such there is, is merely incidental to the main purpose. The fact that a stockholder in a corporation engaged in the transportation for hire of persons or property, or both, may receive some benefit from the earnings of the carrier does not vitiate the action of the State in delegating to such carrier the power to condemn property for its necessary public uses, nor may it be given the effect in any such instance of barring the exercise of such power. It must be borne in mind, also, that the Imperial Oil Company is not a stockholder in plaintiff corporation.

Appellants' final argument rests on the theory, as stated in their brief, that:

"The power of eminent domain cannot be exercised unless the State can retain such control as will enable it to compel devotion of the project to

public use independently of the will of the petitioner."

It is claimed that Michigan does not have such control over plaintiff and its pipe line. As before stated, plaintiff applied to the Michigan public service commission for authority to file its certificate of incorporation in this State and to issue securities for the financing of its project. Such application was granted, and thereupon it was admitted to carry on its business in Michigan. It has complied in all respects with the procedure specified by PA 1929, No 16. It sought and obtained the approval of the commission for its proposed pipe line across the State. In granting such approval the commission specified conditions which plaintiff has accepted. No claim is made that it has failed in any respect to act in accordance with the statute granting to it the power of eminent domain or with the orders of the commission thereunder. There is nothing in the situation to suggest that it will refuse to perform the obligations which it has assumed, nor are we in accord with the contention that in the event of such failure or refusal the State would be without remedy. The same argument here advanced was made in *Detroit International Bridge Co.* v. *American Seed Co., supra.* It was there said (pp 298, 299):

"This contention is based upon the proposition that, to justify delegation of the power of eminent domain, the State must retain such control as will enable it to compel devotion of the bridge to public use, independently of the will of plaintiff. *People* v. *Salem,* 20 Mich 452 (4 Am Rep 400); *Board of Health* v. *Van Hoesen,* 87 Mich 533 (14 LRA 114); *Berrien Springs Water-Power Co.* v. *Berrien Circuit Judge, supra.*

"Counsel agree that the State retains police power over the bridge. Through *quo warranto* proceedings, the State undoubtedly could compel plaintiff

to fulfil its charter obligations. *Swan* v. *Williams,* 2 Mich 427. Defendant has not suggested any manner in which the control of the State necessary to insure public use is wanting, except in respect of the regulation of tolls."

Defendants' assumption that the State lacks authority in the premises because of the nature of the transportation in which plaintiff will engage is not warranted. Not only has plaintiff submitted itself to State jurisdiction with reference to the operations immediately contemplated, but it has pledged itself to transport in intrastate commerce, if given an opportunity to do so. The duty in such respect continues even though occasion for its performance does not presently exist. Furthermore, in addition to the method of procedure suggested by the Court in the *International Bridge Case, supra,* the State has a certain measure of authority over plaintiff's operations, notwithstanding that they involve interstate commerce. *Panhandle Eastern Pipe Line Company* v. *Michigan Public Service Commission,* 328 Mich 650 (86 PUR NS 1) (affirmed, 341 US 329 [71 S Ct 777, 95 L ed 993, 89 PUR NS 1]); *Panhandle Eastern Pipe Line Co.* v. *Public Service Commission of Indiana,* 332 US 507 (68 S Ct 190, 92 L ed 128, 71 PUR NS 97).

Other incidental questions argued by counsel in their briefs do not require discussion. For the reasons stated, we conclude that the trial court had jurisdiction of the condemnation proceeding instituted by plaintiff. The order confirming the report of the commissioners is affirmed. Plaintiff may have costs.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.