### 9139

#### PEARSON v. MATHESON *ET AL.*

##### (86 S. E. 1063.)

DEEDS. CONSTRUCTION. EASEMENTS. CREATION BY CONTRACT. PRIVATE ALLEY. FINDINGS OF FACT.

1. DEEDS—PROPERTY SUBJECT TO CONVEYANCE—EASEMENT OF LIGHT.—A conveyance by the owner of an undeveloped block of land, and his contract executed on the same day and made a part of the deed, whereby the grantee was to erect a one-story storeroom not over 14 feet in height, and the grantor, among other structures, a hotel above the storeroom, were valid, since the grantor's ownership was not limited by four parallel lines and the earth's surface bounded thereby, but he had the right to divide his holding by lateral lines, so that the reservation above the first story did not conflict with the grant.

2. EASEMENTS — LIGHT — DEED AND CONTRACTS — CONSTRUCTION. — The owner of an undeveloped block of land conveyed it, and on the same day entered into a contract in writing made a part of the deed, whereby the grantee was to erect a one-story storeroom not over 14 feet in height, and grantor was to erect a hotel above the store-room, and it was agreed that if the building was destroyed by fire all the walls should be rebuilt within 12 months, and the expense borne according to the conditions of the contract, and afterwards, by contract making no reference to the deed or the former contract, the parties agreed that the grantee should give the grantor the right to run water and steam pipes through the store building into the hotel above it, and the grantor gave grantee the right to open a sky-light in the roof above the store, and extended such privilege to their

assigns and continued it as long as either of the parties or their assigns might desire it. The grantee conveyed his lot and store to plaintiff subject to the contracts, and thereafter the buildings were destroyed by fire. *Held,* that the first contract contemplated a building which should be a permanent structure and that under it and the subsequent contract the assignee had the right to have a skylight put in the new structure

3. Licenses—Real Estate—Skylight.—Such reservation in favor of the grantee and his assigns was not a license.

4. Easements—Easement in Gross—Skylight.—Such reservation of a skylight to the grantee and his assigns was not an easement in gross.

5. Easements—Construction—Air.—Such right of the grantee and his assignee was an easement in the grantor's dominion of the air above the 14-foot line.

6. Easements—Contract—Rescission.—Where the assignee of a first-story storeroom 14 feet in height, with the right to open skylights in the roof above the store, in consideration of allowing the grantor the right to run water and steam pipes through the store building into the hotel above it, forbade the grantor to cover the steam pipes with asbestos, but did not take them out, his acts, while a partial denial of the grantor's right, did not go to the root of the right and upturn it, and hence did not permit the grantor to rescind the contract and to close up the skylight.

7. Appeal and Error—Findings of Fact—Private Alley.—A finding of fact that appellant was not entitled to the extension of a private alley abutting on his lot, in order to reach a certain street sustained the preponderance of evidence, affirmed.

Before Wilson, J., Bennettsville, December, 1914. Modified.

Action by Sam J. Pearson against A. J. Matheson and E. V. Richards. From a decree dismissing the complaint, plaintiff appeals. The facts are stated in the opinion.

*Messrs. Gibson, Muller & Tison* and *J. K. Owens,* for appellant, submit: *The reservation contained in the granting clause of the deed was in conflict with the general grant, and void:* 2 McM. L. 24; 48 S. C. 316; 79 S. C. 166; 36 S. C. 295; 48 S. C. 341; 47 S. C. 288; 32 S. E. 676; 54 S. C. 353; 39 S. E. 639, 651; 18 S. E. 668; 15 S. E. 890; 2 S. E. 31; 3 Washb. R. P. 464; 4 Kent, Com. 368; 13 Cyc. 672.

*Even if not so, it was a mere contract at will terminable by either party on reasonable notice:* 87 S. C. 572; 9 L. R. A. (N. S.) 1184; 50 S. C. 571; 35 L. Ed. U. S. 882; 59 Am. St. Rep. 467; 8 A. & E. Ann. Cas. 280. *Error in depriving appellant of·his rights under contract of July 31, 1905:* Clark, Contracts 662; 7 Cyc. 153; 9 Cyc. 942; 13 S. C. 183. *Rights in alleyway:* 73 S. C. 241; 86 S. C. 281.

*Messrs. Townsend & Rogers,* for respondents, submit: *Rights excepted from grant remain in the grantor:* 5 A. & E. Enc. of L. (1st ed.) 456; 13 Pick. 322; 24 Me. 118; 36 S. C. 295; 96 S. C. 67; Washburn, R. P., secs. 366, 367; 13 Cyc. 674; 11 A. & E. Enc. of L. (2d ed.) 555; 96 S. C. 144. *Estoppel:* 31 S. C. 155; 27 S. C. 53; 57 S. C. 267; *Ib.* 507. *Lands may be divided horizontally:* 21 L. R. A. (N. S.) 115; 55 L. R. A. 513; 3 S. C. 168. *Contract not. a covenant running with the land:* 2 Blackstone, Com. 304; 44 Am. Dec. 379; 13 A. & E. Enc. of L. (1st ed.) 555; 16 *Ib.* 1134, 1149; 24 Ga. 182; 60 Vt. 702; 7 N. H. 257; 6 A. & E. Enc. of L. (1st ed.) 140; 10 *Ib.* 438; 23 S. C. 19. *Rule of construction:* 4 Strob. 208.

*Messrs. Stevenson, Stevenson & Prince,* also for respondent, cite: *Rule of construction:* 79 S. C. 168. *Deed of particular interest in, or portion of, land:* 3 S. C. 195, 196; 50 L. R. A. 120; 131 Mass. 529; 56 Ala. 566; 60 Mich. 622; 55 L. R. A. 513; 2 L. R. A. (N. S.) 1115; 2 McM. 41, 374. *Right not appurtenant to lands:* 109 Mass. 374; 28 Am. St. Rep. 723; 2 Hill L. 543; 60 Vt. 702; 42 Vt. 462; 21 N. H. 293; 24 Ga. 179; 17 Ga. 1; 23 Ill. App. 55; 2 Gray (Mass.) 302; Washburn, Easements 654, 657; 138 Ind. 200; 46 Am. St. Rep. 376. *As to alleyway:* 21 S. C. 224; 34 S. C. 209.

July 21, 1915.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The appeal is from an order of the Circuit Court which dismissed the complaint.

The controversy arises out of a deed from Matheson to Watson and two written contracts betwixt the same parties.

The subject matter of the action is a skylight in the roof of a store building, and a right of way to and from the rear of the store building.

The occasion of the controversy arises out of the destruction by fire of the building about which the paper writings were had, and the erection of another building on the same site and foundations.

The contention of the plaintiff is, that the occasion of the new building, in the place of that which was burned, has modified those rights which the plaintiff theretofore had in a certain skylight in the former building.

The controversy is not between the two original parties to the contracts; but between one of them and the assignee of the other.                    .

A history of the controversy is this:

Matheson was the owner of a considerable block of land on the corner of Darlington and Marlboro streets, in heart of Bennettsville. At the beginning of 1905 this property was undeveloped; on 2d February, 1905, Matheson conveyed by deed the corner lot, but one to Lane Watson, and on the same day these two made a contract in writing about a building on the lots, which they "considered a part of the * * * deed from Matheson to Watson;" buildings were erected on the lot by the parties, by Watson a one-story storeroom and by Matheson, amongst other structures, a hotel above the several storerooms, that is, on the second floor; some controversy arose between Matheson and Watson about getting steam and water pipes in the hotel above, and on 31st July, 1905, they made another written contract, and therein Watson gave to Matheson the right to run water and steam pipes through his store building into the hotel above it, and Matheson gave to Watson the right to open skylights

in the roof above the store of Watson; on 24th March, 1906, Watson conveyed his lot and store to Pearson, and therein provided: "That this conveyance is made subject to contracts entered into between Watson and Matheson, which are duly recorded as aforesaid, and which are made a part of this deed, and to which all needed reference is had." In January, 1908, the buildings were destroyed by fire; Matheson and Pearson commenced to rebuild, and in that performance this controversy arises; the buildings have been completed under an armistice betwixt them, but the questions made by this appeal were left open for adjudication.

There are five exceptions, but the appellant has argued but three questions, and those will be decided. They are these: (1) By the deed from Matheson to Watson the reservation conflicted with the grant, and is, therefore, of no force; (2) but if that be not so, yet under all the paper writings appellant has the right to insert skylights in the new structures; (3) the appellant is entitled to an alleyway leading by the rear of his store building, out to the highway called Marlboro street.

The deed from Matheson to Watson is too plain in its terms to call for any construction of it; the instrument means that which its words indicate. Thereby the grantor by proper words conveyed to the grantee in fee a parcel of land fronting on Darlington street twenty-three feet, running back one hundred and six feet, and with a width in the rear of twenty-three feet. The clause of the deed referred to by appellant as reservation limits the right of Watson and his heirs and assigns to build higher than fourteen feet up from the ground, and reserves the right so to build above that line in the grantor and his heirs and assigns.

The contract betwixt Matheson and Watson hereinbefore referred to, and providing, amongst other things, for the construction of the buildings on the lot, was made by its

terms and the terms of the deed also, a part of the deed; and it binds the parties to it and their heirs and assigns.

The two together plainly evince the intent of the parties to confine Watson's tenure to the soil of the lot granted and fourteen feet above it; and to reserve to Matheson the use of all that space which lay above the fourteen-foot line parallel to and above the soil.

The only issue, if there be any issue, is whether such a contract may be made?

The ownership of Matheson, when he conveyed to Watson, was not limited by four parallel lines and the earth's surface which lay betwixt them. He owned that which lay below the earth's surface, and that which was above it; also he could not dig for a foundation, or build a house.

Therefore, "a man entitled to land * * * may grant the mines underneath * * * and other rights in or over the property." 3 Washburn 340; *Massot* v. *Moses,* 3 S. C. 195.

And if Matheson had the right to divide his holdings by lateral lines, and did that in plain words, then there is no repugnance betwixt the parts of the deed, and the cases cited by counsel thereabout have no relevancy to the matter here in question.

The first issue, therefore, must go against the appellant.

The next question is of more serious import, that which involves Pearson's present right to skylights in his store. If such right now exists it arises solely out of the contract of 31st July, 1905. There was no such express or implied right reserved by the deed from Matheson to Watson and the contract concurrently therewith made by them.

The second story, or that aerial part of the lot lying above a line parallel to the earth and fourteen feet above the earth, was intended to be used for the construction of a hotel.

So far as the deed and concurrent contract show, a solid floor and rooms on it may have been constructed immedi-

ately above Pearson's store, and in that event a skylight would not have been possible of construction.

There is no direct testimony on the subject, but the inference from the testimony is, that in the construction of the hotel a light well, for the hotel rooms, was left open over Pearson's store. The respondent's argument concedes so much.

The inference, too, is, that the contract of 31st July, 1905, arose proximately out of a desire by Matheson to run the heating pipes, for the hotel, through the Watson-Pearson store. By that contract Watson gave to Matheson and his successors the right to construct and maintain the pipes; and Matheson gave to Watson and his assigns the right to let skylights into the roof over Watson's store.

These two reciprocal rights, called privileges in the argument and assured by the agreement, make up the whole of it, except the last paragraph thereof, which (1) extends the privilege to the assigns of the parties; and (2) continues the privileges as long as *either* of the parties or their assigns may desire them.

Had the building not been destroyed by fire, plainly Pearson, as the assignee of Watson, could have maintained the skylights unimpaired by Matheson.

Is the case altered that the building has been destroyed, and another has been put in its place?

The contract of 2d February, 1905, answers that question.

By that contract the parties agreed, amongst other things, "that in case said building is destroyed by fire that all the walls as aforesaid shall be forthwith rebuilt within twelve months from the date of said fire and the expenses incident to the erection and rebuilding of the aforesaid wall shall be upon the same terms and conditions as herein stipulated."

The contract of July made no reference to the deed, or to the contract of February before.

The parties had theretofore, in February, contracted in detail what each party should do towards the construction of

a building, with store below and hotel above.    They contemplated the building would be a permanent structure, so that if destroyed by fire it should again be reared on the same terms and conditions as pertained to the first building.

A fire did happen; the parties actually undertook and have carried out that agreement by rebuilding the house and that has been accomplished.

But when the same parties agreed by the contract of 31st July that the Watson store part of the building should have skylights in the roof, they contracted not alone about the building, which then stood, but by necessary implication; about that which *should take its place* in the event of fire.

The skylights made a valuable improvement in the storeroom; the improvement was of a permanent character; it was inhering in its nature; and the right to it was assured to the assignee of Watson.

The entire contract between the parties, therefore, was made up of that of February and that of July read together; and that though the last contract makes no express reference to the first; for both contracts were in effect about the same subject matter.

If it be said that Matheson has now no need of the steam pipes, and about that the testimony is silent, the answer is that Watson gave for the reservation of skylights that which Matheson exacted.

Watson's right could not have been defeated at the outstart by Matheson's election to take out the steam pipes; neither can it be defeated now by his election not to put them in again, if there in fact be such an election.

We need not confuse the issue by giving to the reservation to Watson and his assigns any particular name.    The respondents call it an "easement in gross" and a "license;" revocable at Matheson's will, or by destruction of the buildings, or by the death of Watson. We think it is neither a license, nor an easement in gross.

If it be true, as the respondents contend and as we hold, that Matheson was sovereign of the air over the Watson store which lay above the fourteen-foot line, then he had the right before the contract of July to close Watson's roof; or he had the right to permit skylight therein; if, therefore, Matheson, for a valuable consideration, agreed with Watson and his assigns to allow the insertion of skylights in that building, or in such other as should take its place in the event of destruction by fire, then upon those plain principles of justice which makes a contract inviolate, Matheson could not at his will revoke the right, and its continuance was not dependent upon the life of Watson or of the first building.

If Watson's right must have a name, then it was an easement in Matheson's dominion of the air above the fourteen-foot line.    2 Washburn 299.

There is no force in the contention of the respondent that when Pearson forbade Matheson to cover the steam pipes with asbestos he thereby rescinded the contract of 31st July.    Such a refusal may have given Matheson a cause of action against Pearson, but it was no warrant for Matheson to rescind the whole contract, and, therefore, to forthwith close up the skylights.    The contention goes to that limit.

The contract itself reserved no such right in Matheson. There is no pretense that the consideration for the contract has totally failed; nor is there any pretense that there was any fraud practiced in making the contract.    Both parties made the contract, and both must undo it.    But Matheson might rescind when Pearson, the other party to the contract, has elected by word or by conduct to consent to a rescission; or when Pearson has totally denied Matheson any benefit under the contract.    6 R. C. L. 926.

Pearson did not take out the steam pipes; his acts done in contravention of the contract amounted to a partial denial of Matheson's enjoyment of his right, they did not go to the

root of the right and upturn it. Bish. on Contracts, sec. 674.

We are, therefore, of the opinion that the appellant's second ground is well taken; and that the plaintiff is now entitled to have the skylights open into the roof of his store.

7        There is no merit in the appellant's third and last contention.

The testimony is more than convincing by its preponderance, that Pearson has no right to that which would amount to a projection west into Marlboro street of an alley which now lies directly in the rear of the stores of Exum and Brown and which ends short of Marlboro street, but which abuts the door of Pearson's store in east side of the rear six-foot extension of the building. He claims so much.

The testimony of Drake and Exum and Brown, and of nearly all of the witnesses, except Pearson, prove this almost beyond a reasonable doubt.

We are, therefore, of the opinion that the judgment of the Circuit Court must be modified, as has been herein indicated, and in other respects confirmed, except as to costs, and that the costs of both Courts be divided equally between the parties.