[L. A. No. 11152. In Bank.—June 1, 1931.]

ANNA M. KIDWELL et al., Appellants, v. GENERAL PETROLEUM CORPORATION OF CALIFORNIA (a Corporation) et al., Respondents.

L. Vernon Gibbs and Cal. H. Lillie for Appellants.

A. L. Weil, Harris F. Shaw and W. L. Appleford for Respondents.

CURTIS, J.—Appeal from a judgment, after order sustaining without leave to amend demurrer to plaintiffs' amended complaint.

Plaintiffs instituted this action to recover from the defendant the General Petroleum Corporation of California damages alleged to have been sustained by them by reason of the entry of said defendant upon the lands of the plaintiffs and the removal by said defendant from said lands of oil and gas by means of wells drilled upon said lands. Plaintiffs also ask for an injuction against said defendant restraining it from any further removal of oil or gas from said wells. The remaining defendants are employees of the defendant corporation. Their presence in the action is not necessary and we will not need to refer to them again, but in mentioning said corporation we will refer to it as the defendant.

In their complaint plaintiffs allege that on the fourth day of October, 1921, they entered into a certain oil and gas lease with defendant covering the lands described in their pleadings. This lease is set out in full in their second amended complaint. It is conceded by plaintiffs that the terms of this lease are clear and unambiguous, and that it is not necessary to resort to parol or extrinsic evidence in order to ascertain the meaning of the parties as set forth in said lease. Nevertheless, plaintiffs' pleadings abound in statements as to the object and purpose of the parties in executing said lease, as to the rights of the parties therein, and as to the nature and character of the property lease. ■ In view of the fact that the lease is made a

part of plaintiffs' second amended complaint and that its terms are clear and unambiguous, the allegations of the second amended complaint regarding its legal effect, the intent of the parties thereunder, the character of the leased property, or any other like statement become immaterial in determining whether the pleadings state a cause of action. Such allegations may be disregarded as surplusage. (*Peak* v. *Republic Truck Sales Corp.*, 194 Cal. 782 [230 Pac. 948] ; *Silvers* v. *Grossman*, 183 Cal. 696 [192 Pac. 534] ; 21 Cal. Jur. 24.) We must, therefore, resort to the terms of the lease itself for the purpose of determining the rights of the parties thereunder. It will be necessary only to set forth a few of its provisions. Others may be referred to hereafter, but a reference thereto is all that will be necessary for the purpose of this opinion. Preliminarily, we might state that it appears from the second amended complaint that the real property described in said lease is situated in or near the center of the Long Beach oil-field in the county of Los Angeles, and that prior to the execution of said lease oil had been discovered in the vicinity of plaintiffs' said lands. The lease by its terms provides that the plaintiffs, as rent for said real property, were to receive a royalty of one-fifth of all oil "produced and saved thereon". The provisions of the lease which, in our opinion, are material to our present purpose are as follows:

"This Indenture of Lease, made and entered into this (4th) day of (October), 19(21), by and between (Minna Kidwell Hotchkiss, a married woman (the separate owner of the West $\frac{1}{4}$ of Farm Lot 66 of the Alamitos Tract, hereinafter described) and Anna M. Kidwell, an unmarried woman), hereinafter called the Lessor (whether one or more), and the (General Petroleum Corporation), a corporation, hereinafter called the Lessee.

"Witnesseth: That the Lessor for (a valuable consideration) to them in hand paid, the receipt whereof is hereby acknowledged, leases to the Lessee, all those certain pieces or parcels of land situate in the county of (Los Angeles) state of California, and more particularly described as follows, to wit:

("West $\frac{1}{2}$ of Farm lot 66 of American Colony Tract, as per map recorded in Book 19, pages 89 and 90 Miscellaneous records of said county.)

"Said lease shall be on the following terms and conditions:

"1. The lease shall continue for a period of 20 years from and after the date of this agreement, and so long thereafter as oil or gas may be produced thereon in paying quantities.

"2. Lessee shall have the sole and exclusive right of prospecting demised premises and drilling for and removing oil and gas therefrom, and to establish and maintain on said premises such tanks, boilers, houses, engines and other apparatus and equipment, power lines, pipe lines, roads and other appurtenances which may be necessary or convenient in the operation or production of oil or gas from said property. Lessee shall have the right during the term of the lease to drill for and develop such water on said premises as it may require in its operations.

"3. The Lessee agrees to start the drilling of a well for oil within (three (3) months) from the date of this agreement, and to continue the work of drilling such well after commencing the same with due diligence until a depth of (3500 feet) has been reached, unless oil is discovered in paying quantities at a lesser depth, or unless such formations are encountered at a lesser depth as will indicate to the geologist of the Lessee that further drilling would be unsuccessful. In the event of encountering mechanical difficulties in the prosecution of work the Lessee may abandon the same, but this lease shall continue in full force, provided a new well is commenced within (ninety (90) days) and thereafter drilled diligently as hereinabove provided.

"4. After discovery of oil in paying quantities in the first well, the Lessee agrees to commence the drilling of a second well within (ninety (90) days) thereafter, and thereafter continuously operate one string of tools, allowing (ninety (90 days) between completion of one well and the commencement of the next succeeding until (four wells) have been drilled including offset wells. Nothing herein shall be construed to limit the number of wells which the Lessee may drill, should it so elect, in excess of the number hereinabove specified.

"7. . . . All wells subsequent to the first well shall likewise be drilled with due diligence, until a depth of 3500 feet has been reached, unless oil is discovered in paying quantities at a lesser depth, or unless such formations are

encountered at a lesser depth as will indicate to the geologist of the Lessee that further drilling would be unsuccessful.''

The construction placed upon the foregoing terms of the lease by the plaintiffs is that while by the preceding paragraphs thereof the defendant is given the ''sole and exclusive right of prospecting demised premises and drilling for and removing oil and gas therefrom'', the succeeding conditions of the lease limit this right to a depth of 3,500 feet beneath the surface of the said lands, and the gravamen of plaintiffs' complaint against the defendant is that the latter, after drilling one or more wells to a depth of less than 3,500 feet and obtaining oil therefrom in paying quantities, as defined by said lease, proceeded to and did drill eight other wells upon said lands each to a depth greater than 3,500 feet, from which and by means of which it has extracted from said lands large quantities of oil, the value of which plaintiffs seek to recover by this action. The particular provisions of said lease upon which the plaintiffs rely in support of the aforesaid contention are those set forth in conditions 3 and 7 of the lease as quoted above, wherein it is stipulated that the lessee shall ''continue the work of drilling such well after commencing the same with due diligence until a depth of 3500 feet has been reached, unless oil is discovered in paying quantities at a lesser depth'' and ''all wells subsequent to the first well shall likewise be drilled with due diligence, until a depth of 3500 feet has been reached, unless oil is discovered in paying quantities at a lesser depth''.

Plaintiffs rely upon the well accepted rule, applicable to the construction of contracts, that a specific intent of the parties governs any general intent expressed therein. The general intent of the parties expressed in said lease was that the lessors, the plaintiffs herein, let and leased to the defendant for the term expressed therein the real property of plaintiffs with ''the sole and exclusive right of prospecting demised premises and drilling for and removing oil and gas therefrom''. Had the lease stopped with these words, plaintiffs concede that the defendant would have had the unquestioned right to explore for and produce oil from said premises at any depth at which oil might be found or discovered beneath the surface of said lands. Were the

stipulations in the lease that the defendant should "continue the work of drilling such well . . . with due diligence until a depth of 3500 feet has been reached, unless oil is discovered in paying quantities at a lesser depth" and until a depth of 3500 feet has been reached, unless oil is discovered in paying quantities at a lesser depth" any limitation upon the general right granted and demised to the defendant, and set forth in condition 2 of said lease, to remove the oil and gas discovered thereon? We are clearly of the view that they are not. ▇▇▇ The only possible meaning that can be given to these provisions of the lease is that they were intended to create and cast upon the defendant a duty and requirement to drill all wells to the depth of 3,500 feet unless oil in paying quantities should be discovered at a lesser depth.

These provisions of the lease were made for the protection of the plaintiffs and were in the nature of an insurance to them that their land would be properly and adequately prospected for oil and gas lying beneath its surface. They cannot in any sense be construed as a limitation upon the broad rights granted to the defendant by the previous terms of the lease.

▇▇▇ The contention of the plaintiffs that, as the parties to the lease at the time of its execution were ignorant of any oil deposits therein below the 3,500-foot level, they did not contract as to these lower deposits of oil, and that their minds did not meet except as to the oil and gas found above that depth, is equally without merit. The lease as we have seen is general in its terms and gives to the defendant the sole and exclusive right to drill for oil and gas upon said land. It might with equal force be contended by plaintiffs' grantors that at the time said lands were conveyed to the plaintiffs the parties to said transaction were ignorant of the valuable deposits of oil and gas lying beneath the surface thereof and that they did not contract in reference to these deposits, and, therefore, that the deed to plaintiffs in so far as these deposits of oil and gas were concerned was void and of no effect, for the reason that the minds of the parties to said deed never met upon the question of the conveyance of these deposits of oil and gas. It is perfectly clear that no such contention could be successfully maintained. The deed to plaintiffs, executed by their grantors,

conveyed to plaintiffs not only the surface of said lands but everything of value beneath the surface whether known or unknown to the parties at the time of its execution. So with plaintiffs' lease to the defendant. It expressly demised and let to the defendant the exclusive right to drill for oil and gas upon the land of the plaintiffs. As this right was subject to no limitation, it necessarily carried the right to any and all deposits of oil and gas lying beneath the surface of the soil whether known or unknown at the date of the execution of the lease. The minds of the parties did meet upon the production of all oil and gas lying beneath the surface of the soil irrespective of the depth at which said oil and gas might be found and irrespective of the fact that at the date of the lease the parties knew oil and gas at that time had been produced only at a depth of 3,500 feet or less.

There is but little authority upon this subject to be found in the decided cases. We think, however, that somewhat similar questions were involved in the cases of *St. Louis Union Trust Co.* v. *Galloway Coal Co.*, 193 Fed. 106, 126, affirmed in 201 Fed. 1022, and *Grimes* v. *Goodman Drilling Co.*, (Tex. Civ. App.) 216 S. W. 202. In the former case the lease provided that the lessor let to the lessees ''the privilege of mining coal on the land''. There were three seams or strata of coal on the lessor's land. The lease made no reference to any particular seam or stratum of coal which the parties had in mind at the time the lease was executed, but it did contain a provision that if the seam of coal opened on said land should fail to be worked out the lease should cease and terminate. The lessees entered upon the land and worked one of the seams of coal until it was exhausted and the question then arose as to whether they could continue and mine coal in the other seams. The court held that the lease covered any coal under the leased land, and the provision in the lease providing for the termination thereof if the seam of coal opened should be worked out was for the benefit of the lessees and conferred an option upon them of terminating the lease when the contingency happened. In the other case cited above, the lessee agreed to drill to the depth of 2,000 feet unless oil or gas was obtained at a lesser depth in paying quantities and that the drilling of one well was a complete fulfillment of the

contract. The lessee drilled one well to the required depth and the lessor then questioned his right to drill other wells. The court held that the stipulation as to drilling one well was for the benefit of the lessee and that under the general terms of the lease he could drill as many wells as in his judgment were reasonably necessary to develop the land. These authorities, we think, are in accord with our construction of the lease before us to the effect that the provisions of the lease requiring the defendant to drill wells to a depth of 3,500 feet is merely a requirement which defendant must fulfill, but is no limitation upon its right under the general terms of the lease to drill to any further depth at which in its judgment oil and gas may be found.

As the sufficiency of the second amended complaint must be determined by the terms of the lease, and as the lease gives to the defendant the unlimited power to drill for oil on said lands, it necessarily follows that the pleading states no cause of action, and the action of the trial court in sustaining the general demurrer thereto must be sustained.

We hardly think the reference of plaintiffs to certain physical facts and characteristics under which oil and gas exist in their natural state can have any material bearing upon the decision of this action. Illustrating this point, plaintiffs quote from Summers' Law of Oil and Gas, page 70, as follows:

"At this point it is necessary to recall briefly some of the physical facts and characteristics of oil and gas, known to geologists and judicially recognized by the courts. They accumulate in strata of sandstone, limestone, or in the crevices of shale, and in their natural state are retained in these rock strata, commonly spoken of as reservoirs, held from escape by sealing or folding of the reservoir rock. Thus imprisoned they are subject to great pressure, rock, gas, or hydrostatic, ranging in different fields from 25 to 1200 pounds per square inch."

From the foregoing statements as well as others from equally eminent authors, plaintiffs assert, and in this assertion we agree, that oil and gas are usually found in separate and distinct strata under the surface of the soil and these strata are entirely separate and distinct and disconnected from one another; that these different strata of oil-bearing rock or shale are frequently found in a hori-

zontal position and that the drilling of a well into one of these strata and the extraction of oil and gas therefrom, may not, and usually does not, affect the oil or gas contained in other strata. From these facts it is apparent that in those localities where oil and gas are found beneath the surface of the soil, the land beneath its surface is frequently made up of horizontal layers or strata of oil and gas bearing rock or shale separated from one another by impervious formations of various substances. As was said by this court in *Graciosa Oil Co.* v. *Santa Barbara,* 155 Cal. 140, 144 [20 L. R. A. (N. S.) 211 [99 Pac. 483, 486]: "For the purposes of separate ownership land may be divided horizontally as well as superficially and vertically." Plaintiffs contend that the above condition prevailed in their lands leased to the defendant, and that by the terms of their lease they let and leased to the defendant only those strata of oil and gas bearing rock lying at or above the 3,500-foot level. There is no question but that the plaintiffs might have made such a lease to the defendant, and had they made such a lease thereby dividing their lands horizontally and leasing to defendant only certain strata thereof, that such a lease would have been binding upon the parties thereto. Acting under such a lease it would have been an invasion of the plaintiffs' legal rights for the defendant to drill into or in anywise extract oil or gas from any stratum of oil or gas bearing rock not included within the terms of its lease. But as we have already seen, the lease involved herein is not such a one. There is nothing contained therein that in the faintest degree indicates any intention of the parties to divide the leased lands horizontally or to confine or limit the defendant in its explorations for oil and gas to any particular stratum or horizontal section thereof. While, therefore, agreeing with the plaintiffs as to the physical conditions of their said lands, we are unable to perceive how these facts in any way can assist them in their present controversy with the defendant. They had it in their power to provide against the drilling by the defendant below the 3,500-foot level, and the extraction of oil and gas from the sands beneath that depth, but having failed to take advantage of this right they must now abide by the terms of their lease, which gives to the defendant the exclusive right to drill for

oil and gas upon their said land without any restrictions as to the depth to which this drilling may be carried on.

Defendant also demurred to plaintiffs' second amended complaint on the ground that it appears therefrom that plaintiffs' alleged causes of action are barred by laches and the statute of limitations. It is unnecessary to discuss these grounds of demurrer. Having held that the pleadings fail to state facts sufficient to constitute a cause of action, it is a matter of no consequence whether the other grounds of demurrer are, or are not, well taken.

The judgment is affirmed.

Richards, J., Langdon, J., Seawell, J., Waste, C. J., and Shenk, J., concurred.