233 P.2d 204

**THOMPSON et ux. v. GREER.**

No. 5389.

Supreme Court of New Mexico.

June 28, 1951.

Paul B. Palmer, James L. Brown, Farmington, for appellants.

G. W. R. Hoy, Farmington, Hannett & Hannett, Albuquerque, for appellee.

McGHEE, Justice.

On January 12, 1935, the appellants executed and delivered to the appellee an oil and gas lease on eighty acres of land for a term of three years, and so long thereafter as oil or gas was produced in paying quantities. The lease also provided:

"The lessee agrees to commence the drilling of a well for oil /or/ /a/nd gas on some part of the above described leased land on or before the 14th day of April, 1935. All wells and operations thereon shall be prosecuted with reasonable diligence, and drilled to what is locally known as the Bloomfield or Farmington sands, estimated to be 1000 feet in depth, unless oil or gas be encountered in commercial quantities at a lesser depth.

"The drilling of one well and the drilling, or starting the drilling of a second well within three years from the date hereof will complete the drilling obligations hereunder and if at the expiration of three years from the date hereof no second has been drilled (or started) this lease shall be and become null and void, except as to ten (10) acres the producing well is on, said ten acres to be selected by lessee in a square form immediately surrounding said producing well, and if a dry well be encountered in the first well drilled and no other well be drilled (or started) within the lease term then the entire acreage hereof shall be released of record."

Various extensions were granted the lessee to start drilling operations, the last giving him until March 19, 1942, to complete a commercial well, and the trial court found a commercial gas well had been completed at a depth of more than 2,000 feet at a cost of approximately $16,000 within the time allowed. On August 19, 1946, the plaintiffs sold the adjoining forty-acre tract on which a well had not been drilled to James C. Townsend, who, on September 6, 1946, conveyed it to the defendant and Maurice F. Florance, both conveyances being subject to the oil and gas lease made to the defendant, and its extensions.

The trial court made the following findings of fact and conclusions of law:

"1. On the 12th of January, 1935, the plaintiffs entered into an oil and gas lease with the defendant, Al Greer, a copy of which lease is annexed to plaintiffs' complaint and marked 'Exhibit A,' covering the SE¼SW¼ Section 10, and NE¼NW¼ Section 15, T. 30 N., R. 11 West, and thereafter sold and delivered title to the NE¼ NW¼ of Section 15, T. 30 N., R. 11 West, to the defendant, Al Greer, and one, Maurice Florance.

"2. That thereafter plaintiffs granted to the defendant five separate extensions of time to complete the drilling of a commercial well on said lands, all of which extensions were made in writing and copies thereof annexed to the defendant's answer to the amended complaint and marked respectively Defendant's Exhibits 1, 2, 3, 4, and 5. That the last extension extended the period of the lease to March 19, 1942, during which time the defendant completed a commercial well at an expense of approximately $16,000 to a depth of more than 2,000 feet.

"3. That the well drilled upon said lands by the defendant is capable of producing and does produce gas in commercial quantities.

"4. That the defendant has exercised reasonable diligence in marketing and attempting to market the gas produced in said well.

"5. That the last extension heretofore mentioned in Finding No. 2 extended said lease to the 19th day of March, 1942, and subsequent to the expiration of said last extension the defendant accepted payments from the defendant for royalties on gas produced from said well.

"From the foregoing Findings of Fact the Court concludes as matters of law:

"1. That the defendant under his lease was not limited in his right to drill on said leased lands to the Farmington sands only, but upon developing the fact that the Farmington sands would not produce gas or oil in commercial quantities had the right to explore to a greater depth for gas and oil in commercial quantities which the defendant did.

"2. That after the plaintiffs sold their interest in the NE¼NW¼ of Section 15, T. 30 N., R. 11 W., they had a property interest only in the remaining forty acres upon which the well was drilled, and inasmuch as no more than one well can be lawfully drilled on one forty-acre tract under the Rules of the State Oil and Gas Conservation Commission, and the complaint was filed subsequent to said sale, the plaintiffs owned no right which would justify the court in granting them relief for failure to drill on the forty acres which they

had sold and in which they no longer had a property interest.

"3. That the plaintiffs by the acceptance of royalty payments after the alleged breach of the lease contract waived their right to forfeiture and by their conduct are estopped from asserting such right to terminate the lease.

"4. That the plaintiffs' cause of action is barred by the statute of limitations.

"5. That there was no evidence offered by the plaintiff touching the question of accounting.

"6. That judgment should be entered in favor of the defendant and against the plaintiffs dismissing the plaintiffs' complaint and awarding the defendant his costs in this litigation expended to be taxed by the Clerk."

■ The plaintiffs assign 25 claimed errors, all relating to findings of fact and conclusions of law made or refused by the trial court, except one relating to the admission of testimony by the defendant as to the deepening of the well from the Bloomfield or Farmington sands to the Picture Cliff formation. Twenty-four of the assignments are to the effect the trial court erred in making certain numbered findings, refusing other numbered findings, and a like assignment on conclusions of law made or requested, none being quoted or their substance stated in the brief. The plaintiffs then discuss all under one heading, "Points, Authorities and Arguments," without setting up any specific point or points, but present a running comment and quotation of authorities, with an occasional reference to pages in the transcript. No effort is made to set out the substance of the testimony relating to the findings attacked or tendered, except as to one immaterial error in finding No. 1 where the court stated the plaintiff conveyed one forty-acre tract direct to the defendant and Florance, when in fact it was made to Townsend who later conveyed to Greer and Florance. We will treat finding No. 1 as so modified, and accept the remainder of the findings as made by the trial court. See Lea County Fair Association v. Elkan, 52 N.M. 250, 197 P.2d 228.

■ Due to the importance of certain of the legal questions involved, we will, so far as they are concerned, disregard the failure of the plaintiffs to reasonably comply with our rules in the preparation of their brief.

The defendant first drilled to the Bloomfield or Farmington sand, found at approximately 1,000 feet, and failing to there find oil or gas in paying quantities he drilled in to the Picture Cliff formation below 2,000 feet where commercial production was obtained. The plaintiffs contend the lease was only into the Bloomfield or Farmington sand, and that the area below was not included in the lease, while the defend-

ant says he was only obligated to drill to the named sand, but he has a valid lease without limitation as to depth.

The clause of the lease material to the point which has not been quoted supra, reads: " *   *   * and by these presents does grant, demise, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and of laying of pipe lines, and of building tanks, . powers, stations and structures thereon to produce, save and take care of said products, all that certain tract of land situate in the County of San Juan * * * (describing land) * * *. It is agreed that this lease shall remain in force for a term of three years from this date, and as long thereafter as oil or gas or either of them is produced from said land by lessee in commercial quantities."

█ The Supreme Court of California in Kidwell v. General Petroleum Corporation, 212 Cal. 720, 300 P. 1, 76 A.L.R. 830, had this question before it under a lease similar to the one we have here, except the depth to which a well was to be drilled was 3,500 feet. Their holding is fairly summarized in the first paragraph of the syllabus, as follows: "Stipulations in an oil and gas lease requiring the lessee to start drilling within a certain time and to continue drilling with due diligence until a depth of 3,500 feet is reached, unless oil is discovered in paying quantities at a lesser depth, are not a limitation upon a general provision of the lease giving the lessee the sole and exclusive right of drilling for and removing oil and gas from the leased premises, so as to prevent the lessee from drilling to a greater depth than 3,500 feet and removing oil from the premises."

We approve and will follow the holding in that case. In the note following the report of the case in A.L.R., the annotator states: "The few cases which have considered the question here raised are in virtual agreement in holding that a stipulation in an oil, gas, or mining lease imposing a minimum obligation upon the lessee as to extent of development of the leased premises or the use thereof, does not operate as a limitation of or restriction on his right in these respects."

█ A lessor may, of course, limit the depth to which he leases his land for oil, gas or other minerals, but we find nothing in the lease here involved to sustain the plaintiffs' contention they did not lease the land below the Bloomfield or Farmington sand. On the contrary, it clearly shows they leased all of the land without limitation as to depth, and the defendant obligated himself to drill to the Farmington or Bloomfield sand, and he was within his rights when he drilled to the Picture Cliff formation and brought in the commercial well and thus validated his lease.

■ The lease further provided: "The drilling of one well and the drilling, or starting the drilling of a second well within three years from the date hereof will complete the drilling obligations hereunder and if at the expiration of three years from the date hereof no second has been drilled (or started) this lease shall be and become null and void, except as to ten (10) acres the producing well is on, said ten acres to be selected by lessee in a square form immediately surrounding said producing well, and if a dry well be encountered in the first well drilled and no other well be drilled (or started) within the lease term then the entire acreage hereof shall be released of record." The plaintiffs also urge they are at least entitled to cancellation of the lease except for ten acres immediately surrounding the well because of the failure of the defendant to drill a second well. The defendant has several answers to this contention, the first of which is that seven months prior to the expiration of the last extension and the bringing in of the producer from the Picture Cliff formation the plaintiffs sold without reservation the forty-acre tract which had not been drilled. The plaintiffs say it is true they sold the forty-acre tract which had not been drilled, but that a second well should have been drilled on the forty acres they still own; but they fail to take into account the fact the Oil Conservation Commission, under authority conferred upon it by Chapter 72, Laws of 1935, by the terms of Rule 2, Order 4, Circular No. 1, effective August 12, 1935, provided no well should be drilled closer than 330 feet of the owner's property line nor closer than 660 feet to any other well. Provision is made for exceptions in certain cases, after hearing before the commission, but there is neither finding nor contention in this case that facts could have been presented to the commission which would justify an exception to the rule.

■ A further answer made by the defendant is that the plaintiff by acceptance of the royalty payments, with knowledge of the facts, waived any default. The general rule on the subject is stated in 24 Am. Jur., Sec. 76, (Gas and Oil), pp. 584 and 585, as follows: "A forfeiture clause in a gas and oil lease is for the benefit of the lessor, and he may invoke it, or he may waive it, as he pleases. * * * it is well settled that acceptance of delay rental with knowledge that drainage is taking place operates as a waiver of the right to forfeit the lease for failure to drill protection wells; and on similar principles, it is held that acceptance of royalties while the lessee is breaching an express covenant for development precludes the lessor from thereafter declaring a forfeiture for such default."

In the Texas case of Von Hatzfeld v. Haubert, Tex.Civ.App., 224 S.W. 220, it was held a lessor was not entitled to de-

clare the forfeiture of an oil and gas lease where he had from time to time agreed to delays in drilling of a well by the lessee, and such lessee had thereafter brought in a commercial gas well at considerable expense, and lessor had accepted a royalty payment.

In the case of Hood v. Southern Production Co., 206 La. 642, 19 So.2d 336, it was held the acceptance by the lessor of delay rental with knowledge of a breach of the implied covenant to drill an offset well operated as a waiver of the right of action either for damages or for forfeiture of the lease for failure to drill an offset well during the period for which rental was received. See also Masterson v. Amarillo Oil Co., Tex.Civ.App., 253 S.W. 908.

This court in Libby v. De Baca, 51 N.M. 95, 179 P.2d 263, held although the lessee was in default in failing to drill additional wells and market the gas from the one commercial well he had drilled, still, due to the large expenditure of money he had made in drilling a second well on the lease (the only commercial well of the two drilled), we would not permit the cancellation of the lease on the forty-acre drilling unit on which the producer was located, provided the lessee found or made a market for the gas within a reasonable time after remand.

Here, the lessee within the extended term did get a commercial well at an expenditure of approximately $16,000, and before it was brought in the plaintiffs had parted with their entire interest in the adjoining forty acres. The rule of the Oil Conservation Commission prohibited the drilling of a second well on the forty-acre tract where the producer was located, and there is no contention that permission could have been secured to drill a second well on such forty-acre tract. The trial court found the defendant had exercised reasonable diligence in marketing and attempting to market the gas. The statement was made at the argument and not disputed that a market has now been found for the gas and it is being sold and the money received therefor is being deposited in court awaiting our decision in this case. In addition, the plaintiffs accepted royalties with knowledge of the claimed breach. We are of the opinion and hold they are not entitled to a decree cancelling the lease on the forty acres they still own or any part of it.

What we have said decides the case and makes it unnecessary to pass on the other questions raised

The judgment will be affirmed, and it is so ordered.

LUJAN, C. J., and SADLER, COMPTON and COORS, JJ., concur.