MATTIE FAIR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

R. W. FAIR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49033, 49034. Filed February 27, 1957.

*Allen E. Pye, Esq.,* and *Weldon J. Squyers, Esq.,* for the petitioners.
*Graham R. E. Koch, Esq.,* for the respondent.

OPINION.

BLACK, *Judge:* The petitioners, the owners of a commercial lot with a 2-story building thereon, conveyed, without consideration, to the Foundation, a charitable corporation, the perpetual right to build, own, and maintain 5 additional stories on the existing 2-story building, plus the right to the exclusive use of a portion of the existing 2-story building to be used as an entrance, lobby, stairway, and elevator shafts. The petitioners agreed to do nothing to weaken the support of the upper 5 stories. In the event of destruction of the 2-story building, the petitioners did not obligate themselves to rebuild it but, if they did elect to rebuild, the Foundation would also have the right to rebuild.

The petitioners claimed a charitable contribution of $70,000 for the rights and interests conveyed to the Foundation and deducted that amount to the extent provided in section 23 (o),[1] Internal Revenue Code of 1939, and the regulations [2] thereunder. It is agreed that gifts to the Foundation are deductible to the extent provided in section 23 (o). The Commissioner has disallowed the entire claim, stating in his deficiency notices that "[i]t has been determined that you are not entitled to a deduction in any amount for the alleged contribution of $70,000.00 made to the Fair Foundation, Tyler, Texas." The

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

* * * * * * *

(o) CHARITABLE AND OTHER CONTRIBUTIONS.—In the case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of :

* * * * * * *

(2) a corporation, trust, or community chest, fund, or foundation, created or organized in the United States or in any possession thereof or under the law of the United States or of any State or Territory or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * *

* * * * * * *

to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer's adjusted gross income. Such contributions or gifts shall be allowable as deductions only if verified under rules and regulations prescribed by the Commissioner, with the approval of the Secretary.

[2] Regulations 111.

SEC. 29.23 (o)–1. CONTRIBUTIONS OR GIFTS BY INDIVIDUALS.—A deduction is allowable under section 23 (o) only with respect to contributions or gifts which are actually paid during the taxable year, regardless of when pledged and regardless of the method of accounting employed by the taxpayer in keeping his books and records. * * *

* * * * * * *

If the contribution or gift is other than money, the basis for calculation of the amount thereof shall be the fair market value of the property at the time of the contribution or gift.

respondent contends in the alternative, by an amended answer, that if the Court should find that the rights and interests conveyed had a fair market value, and that the fair market value is deductible as a contribution under section 23 (o) of the 1939 Code, the basis of the 2-story building retained by the petitioners should be reduced by the amount found to have been contributed.

The respondent's position in his notices of deficiency is that the rights and interests contributed to the Foundation are not of such a nature as to give rise to a deduction under section 23 (o). Section 23 (o) allows a deduction for gifts; the regulations contemplate gifts of money or property. Regs. 111, sec. 29.23 (o)-1. Apparently, it is the respondent's position that the rights and interests conveyed do not constitute property. We cannot agree. Property is the sum of rights and powers incident to ownership. *Nashville, C. & St. L. Ry.* v. *Wallace*, 288 U. S. 249, 268 (1933). The right to use the air space superjacent to the ground is one of the rights in land. These air rights are frequently the most valuable rights connected with the ownership of land since the value of commercial property consists almost exclusively of the right of the owner to erect business and industrial structures thereon. Cf. *Piper* v. *Ekern*, 180 Wis. 586, 194 N. W. 159, 161 (1923). The sale or lease of superjacent air space is not at all uncommon in large cities.[3] Attempts to subdivide the superjacent air space into horizontal strata or air lots poses difficult questions.[4] But there does not seem to be any policy of the law prohibiting these transactions and their validity has been recognized.[5] We have found no Texas authority on the subject.[6] However, in view of the foregoing and the fact that the rights and interests conveyed gave the Foundation a present irrevocable interest in the property, cf. *Priscilla M. Sullivan*, 16 T. C. 228 (1951), we hold that the conveyance of the rights and interests named in the written instrument was a gift within the contemplation of section 23 (o) of the 1939 Code.

---

[3] Some notable examples of air right developments include The New York Central Terminal Air Rights Development in New York City; The Cleveland Union Terminal Development in Cleveland; and The Merchandise Mart, The Chicago Daily News Building. and The Prudential Building in Chicago. Also see Hall, et al., "Approaches to the Valuation of Air Rights," The Appraisal Journal, July 1956, p. 325.

[4] See Ball, "Division into Horizontal Strata of the Landspace above the Surface," 39 Yale L. J. 616 (1930); Ball, "Air Rights," 23 Ill. L. Rev. 250 (1928); 2 Tiffany, Real Property 503 (3d ed. 1939); but see *Cleveland* v. *City of Detroit*, 322 Mich. 172, 33 N. W. 2d 747, 750 (1948), and Note, 24 N. Y. U. L. Q. 443 (1949).

[5] See *Pearson* v. *Matheson*, 102 S. C. 377, 86 S. E. 1063 (1915). The State of Illinois has passed a statute specifically allowing railroads to subdivide, improve, and sell the superjacent air space. Ill. Rev. Stat., c. 114, sec. 174 (a) (1953). Also the subdivision of buildings for purposes of separate ownership has long been recognized.

[6] The subdivision of subjacent land into horizontal strata for purposes of separate ownership is analogous to the situation here involved. Such subdivision is recognized in Texas and elsewhere. See *Humphreys-Mexia Co.* v. *Gammon*, 113 Tex. 247, 254 S. W. 296, 301–302 (1923), and *Kidwell* v. *General Petroleum Corporation*, 212 Cal. 720, 300 Pac. 1, 4 (1931).

The respondent's position is that the petitioners have not proved any values for the rights and interests contributed. The Evaluating Committee of the Tyler Real Estate Board, at the request of the petitioner, R. W. Fair, valued the property in question and the valuation reached was $81,426.66. The evaluation report was submitted in evidence. Two of the three members of the committee were witnesses at the hearing and both testified that the opinion of value contained in the evaluation report represented the unanimous opinion of the committee. The two real estate men who testified were experienced real estate men and were familiar with real property values in Tyler and with the property in question.

The respondent did not offer any countervailing testimony; however, he contends that the appraisal is of little use in determining the fair market value of the property contributed because the appraisal is based on an erroneous premise, viz, that a fee interest was granted. The respondent's position is that the rights and interests conveyed could only be and were only a license, or at most, an easement, since no interest in the ground was conveyed.

The significant thing in a valuation of this type, we think, is that the evaluators understand what property is to be valued regardless of the characterization placed upon the property to be valued by the different parties. One of the real estate men who valued the property testified that he was determining "aerial value" and that "aerial value was the right to use an upper story base * * * the right to build over a building." The other witness who evaluated the property testified to the same effect. The air rights that they evaluated were clearly the rights and interests that were described in the conveying instrument as the property contributed.

The Foundation was given the perpetual right to build above the Sears building. It is true, if the Sears building was destroyed the petitioners did not obligate themselves to rebuild. The Foundation rights would cease at that time if the petitioners did not elect to rebuild. It appears that the appraisers understood this since they testified that they were valuing the right to build above the Sears building.

The appraisers based their opinion of the value of the air rights on ground values. As we noted earlier, the value of commercial property principally consists of the value of the right to build thereon. They determined these air rights to be worth one-third of the total ground value, less, however, $9,600 deducted for 12 x 40 feet of the original lot. Considering the facts that the site was located in a business district, that the Sears building was only 6 years old, that additional stories were contemplated and provided for when the Sears building was erected, that the Sears building was only 2 stories high

and that the rights of access and support were given, we cannot say that the basis of the air right valuation was not reasonable and fair. The gift of a building site on top of an existing building would undoubtedly be valueless in some instances. But this is not the case of a person giving away a building site, on which it is not feasible or practical to build, and contending that the property had value. All of the evidence in the record points to the fact that the aerial space above the Sears building which was contributed had very substantial value. Also, the 5 additional stories that were contemplated were actually built by the Foundation at a cost of almost $700,000.

We have no reason to question the $38,466.66 value given by the appraisal committee to the aerial space above the Sears building. This valuation, we think, was well supported by the two members of the committee who testified at the hearing.

Also the three other items of evaluation contained in the report of the committee, namely, $15,360, $9,600, and $18,000, were well supported by petitioners' two expert witnesses who testified at the hearing. These three items need not be separately enumerated here—they are fully described in the valuation report set out in our Findings of Fact.

As shown in that report, the total valuation reached by the committee was $81,426.66. Petitioners, however, in their returns only claimed a value for the gift of $70,000, and deducted on their returns that amount to the extent permitted by section 23 (o), Internal Revenue Code of 1939. In their brief they request that we make a finding of fact that "the fair market value of the property conveyed by petitioners to the Fair Foundation was not less than $70,000.00." We think the evidence fully supports such a finding of fact and our Findings of Fact are to that effect. It is this valuation of $70,000 which should be used in a recomputation under Rule 50. Respondent's determination as to the gift is reversed.

### Alternative Issue.

Having found that the gift had a fair market value, it becomes necessary to consider the respondent's alternative contention.

At the hearing, counsel for the respondent amended his answer by adding the following language prior to the prayer:

If the Court should determine that the right conveyed by the petitioner to the Fair Foundation had any value, then the basis of the two story building owned by the petitioner should be reduced by an amount equal to such value.

We do not think the issue has been presented in such a manner as to require us to rule upon it. Respondent has not asked for any addi-

tional deficiency on account of this proposed adjustment and has not asserted that any deficiency will result from the adjustment, if made. There is nothing in the deficiency notices relating to this issue. He is, in effect, asking for affirmative relief. See Rule 32, Tax Court Rules of Practice. Rule 14 (*b*) of the Rules of Practice provides that the answer shall contain "a statement of any facts upon which the Commissioner relies for defense or for affirmative relief." He has not stated any facts regarding this new issue. He did not offer any evidence regarding the issue. From the state of the record, we do not know why he wants the basis of the Sears building reduced, i. e., we do not know whether a deficiency will result therefrom and how, or if it will affect the petitioners' tax liability for the year before us.

The Sears building was not disposed of during the year in question; therefore, the only thing that we could assume from the record is that the respondent wishes to reduce the amount of depreciation that was taken during the year in question for the period from the time of the conveyance to the end of the taxable year. The amount of depreciation taken in prior years and in the taxable year has been stipulated, but there has been no evidence to show that this depreciation was unreasonable and there has been no argument relating to it.

For the taxable year which we have before us, the fiscal year ending November 30, 1948, it has been stipulated, "during the year ended November 30, 1948, the petitioners deducted depreciation in the amount of $3,164.35." The Commissioner in his deficiency notices did not disallow any part of this claimed depreciation. In his amended answer he does not allege that he erred in allowing the petitioners the amount of depreciation which they claimed on their respective returns.

Our purpose is to redetermine the deficiency. In doing so we decide questions which bear on the deficiency or tax liability. As we said, from the record we do not know how the issue sought to be raised by the respondent bears on the deficiency. We, therefore, hold the issue is not properly before us at this time.

We, of course, are not deciding in this proceeding what effect, if any, the conveyance by petitioners in 1948 to the Foundation will have on the basis for gain or loss if and when the property may be disposed of at some future time. Nor are we deciding what effect, if any, the conveyance will have on petitioners' basis for depreciation in years subsequent to the taxable year which we have before us. We do not have these questions for decision in this proceeding and, therefore, we make no effort to decide them.

*Decisions will be entered under Rule 50.*