T.C. Memo. 2011-109

UNITED STATES TAX COURT

WILLIAM M. MCNEIL AND CATHERINE A. MCNEIL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9238-09.                   Filed May 23, 2011.

<u>Larry D. Harvey</u>, for petitioners.

<u>Sara J. Barkley</u> and <u>Tamara L. Kotzker</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies of $475
and $5,420 in petitioners' Federal income taxes for 2003 and
2005, respectively, and penalties of $95 and $1,084 under section
6662 for each of those years, respectively.  After concessions,
the issues for decision are whether petitioners' sales of
Colorado State tax credits qualify for capital gain treatment or

should be taxed as ordinary income and, if capital gain treatment applies, when the holding period for the assets sold begins. Those issues are before the Court on cross-motions for summary judgment on undisputed facts. Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Petitioners resided in Colorado at the time that they filed their petition. At all material times, they have been members of McNeil Ranch, L.L.C. (the partnership).

For tax years beginning on or after January 1, 2000, a Colorado State income tax credit is available for the donation of all or part of the value of a perpetual conservation easement in gross by resident individuals, C corporations, partnerships, S corporations, and other passthrough entities, estates, and trusts (State conservation easement credit). Colo. Rev. Stat. sec. 39-22-522 (2005).

For the 2003 and 2005 tax years, the State conservation easement credit is equal to 100 percent of the first $100,000 of the fair market value of the donated portion of a perpetual conservation easement in gross created upon real property in Colorado and 40 percent of all amounts of the donation in excess

of $100,000; except that the total State conservation easement credit cannot exceed $260,000 per donation. Id. sec. 39-22-522(4)(a).

Any unused portion of the State conservation easement credit may be carried forward for 20 successive tax years. Id. sec. 39-22-522(5)(a). If Colorado has a budget surplus for a tax year when the State conservation easement credit exceeds the original recipient's State income tax liability, the taxpayer may receive a cash payment from Colorado. Id. sec. 39-22-522(5)(b). For donations made during 2003 and 2005, the aggregate amount of the payment and the amount used as an offset against income tax for that year cannot exceed $50,000. Id. sec. 39-22-522(5)(b)(III).

The original recipient can also transfer a State conservation easement credit that is not used to certain eligible third-party taxpayers. Id. sec. 39-22-522(7). The transferee can use the State conservation easement credit to reduce its Colorado income tax liability. Id. Transferees are ineligible for a refund and may not transfer their credits. Id.

In 2003, the partnership sold a conservation easement encumbering approximately 580 acres of real property to American Farmland Trust in a bargain sale (2003 American Farmland Easement). The partnership received proceeds of $330,000 from the sale. The fair market value of the 2003 American Farmland Easement was $1,026,000.

In 2003, the partnership sold a conservation easement to the Wetlands America Trust, Inc., a.k.a., Ducks Unlimited, encumbering approximately 520 acres of real property in Rio Grande County, Colorado, in a bargain sale (2003 Ducks Unlimited Easement). The partnership received proceeds of $195,000 from the sale. The fair market value of the 2003 Ducks Unlimited Easement was $819,000.

The sale of the 2003 American Farmland Easement and the 2003 Ducks Unlimited Easement gave rise to a State conservation easement credit of $260,000. See Colo. Rev. Stat. sec. 39-22-522(4)(a)(I). On December 18, 2003, the partnership sold $231,600 of its available $260,000 State conservation easement credit for $178,332 (2003 transferred credit).

Petitioners were the only members of the partnership in 2003 and 2005. All of the income, deductions, and credits reported on the partnership's 2003 and 2005 partnership returns flowed through the partnership to petitioners' 2003 and 2005 individual income tax returns.

The partnership filed a Form 1065, U.S. Return of Partnership Income, for the 2003 tax year. The partnership reported a charitable contribution deduction with respect to the 2003 American Farmland Easement of $696,000, representing the difference between the fair market value of $1,026,000 and the amount realized of $330,000. The partnership reported a

charitable contribution deduction with respect to the 2003 Ducks Unlimited Easement of $624,000, representing the difference between the fair market value of $819,000 and the amount realized of $195,000.

On the 2003 Form 1065, the partnership also reported a net long-term capital gain of $685,076, representing the gain from the following transactions: (1) $189,472 of net gain from the sale of the 2003 Ducks Unlimited Easement; (2) $321,613 of net gain from the sale of the 2003 American Farmland Easement; and (3) $173,991 of net gain from the sale of the 2003 transferred credit, calculated as the difference between the $178,332 realized and the basis of $4,341.

On petitioners' jointly filed 2003 Form 1040, U.S. Individual Income Tax Return, they reported noncash charitable contributions of $1,320,000, subject to the limitations of section 170(b)(2)(A), related to the sales of the 2003 American Farmland Easement and the 2003 Ducks Unlimited Easement.

On Schedule D, Capital Gains and Losses, of petitioners' 2003 Form 1040, they reported the $685,076 of net long-term capital gain reported on the 2003 Form 1065 as long-term capital gain, including the $173,991 of net gain from the sale of the 2003 transferred credit. Consistent with the 2003 Form 1065, petitioners excluded the partnership's basis of $4,341 in the

2003 transferred credit in calculating the net long-term capital gain on their 2003 Form 1040.

In 2005, the partnership sold a conservation easement in a bargain sale to the Wetlands America Trust, Inc., encumbering approximately 220 acres of real property in Rio Grande County, Colorado (2005 Ducks Unlimited Easement). The partnership received proceeds of $330,000 from the sale. The fair market value of the 2005 Ducks Unlimited Easement was $572,000. The sale of the 2005 Ducks Unlimited Easement gave rise to a State conservation easement credit of $156,800. See Colo. Rev. Stat. sec. 39-22-522(4)(a)(I). On December 15, 2005, the partnership sold all of the $156,800 State conservation easement credit for $133,280 (2005 transferred credit).

The partnership filed a Form 1065 for the 2005 tax year. The partnership reported a charitable contribution deduction with respect to the 2005 Ducks Unlimited Easement of $242,000, representing the difference between the fair market value of $572,000 and the amount realized of $330,000. The partnership reported net long-term capital gain of $113,429 from the sale of the 2005 transferred credit, calculated as the difference between the $133,280 realized and a basis of $19,851.

On petitioners' jointly filed 2005 Form 1040, they reported the charitable contribution deduction with respect to the 2005 Ducks Unlimited Easement of $242,000 from the 2005 Form 1065,

subject to the limitations of section 170(b)(2)(A). On Schedule D, petitioners reported the $113,429 of net gain from the sale of the 2005 transferred credit reported on the 2005 Form 1065 as long-term capital gain. Consistent with the 2005 Form 1065, petitioners excluded the partnership's basis of $19,851 in the 2005 transferred credit in calculating the net long-term capital gain on their return.

On February 24, 2009, respondent sent a notice of deficiency to petitioners concerning their 2003 and 2005 income taxes, recharacterizing the $178,332 of gain petitioners realized from the sale of their 2003 transferred credit and the $133,280 of gain petitioners realized from the sale of the 2005 transferred credit as ordinary income rather than long-term capital gain.

In the notice of deficiency, respondent further disallowed petitioners' purported bases of $4,341 in the 2003 transferred credit and $19,851 in the 2005 transferred credit. Petitioners conceded this issue in the petition.

### Discussion

The issues in this case and the arguments made here by the parties were recently addressed by this Court in <u>Tempel v. Commissioner</u>, 136 T.C. ___ (2011). We there held that Colorado State credits such as those sold by the taxpayers were capital assets. We also held that the holding period of the credits commenced at the time that the taxpayers received them and not

when they acquired the real property that was the subject of the conservation easement.

As explained at length in Tempel v. Commissioner, supra at ___ (slip op. at 7), section 1221(a) defines "capital asset" as "property held by the taxpayer" other than eight specifically excluded categories. None of the eight excluded categories describes State tax credits such as those received and sold by the taxpayers. We considered, however, whether the judicially created "substitute for ordinary income doctrine" applied to the State tax credits received and sold by the taxpayers. Id. at ___ (slip op. at 15-20). We concluded that it did not because the credits the taxpayers sold did not represent a right to income. Id. at ___ (slip op. at 20).

With reference to the holding period of the credits, which in turn determines whether capital gains are long term or short term, in Tempel we rejected the taxpayers' argument that their holding period in the land would be carried over or "tacked" on to their holding period in the credits. We reasoned that the credits arose on account of the grant from the State, only after the easement donation was complete. Thus the credits were never part of the taxpayers' real property rights. The same reasoning applies here. Petitioners' attempt to characterize their credits as "lesser estates" in the real property, citing cases such as Sullivan v. United States, 618 F.2d 1001 (3d Cir. 1980)

(leasehold interests), <u>Fasken v. Commissioner</u>, 71 T.C. 650 (1979) (easement or development grants), and <u>Fair v. Commissioner</u>, 27 T.C. 866 (1957) (air rights), is not persuasive and does not justify a different result.

In <u>Tempel v. Commissioner</u>, <u>supra</u> at ___ n.4 (slip op. at 7 n.4), the Commissioner did not challenge classification of the tax credits as property.  Here, too, respondent acknowledged in respondent's motion for summary judgment that "There is no dispute that the sales of the * * * [credits] were sales of property" and that the disagreement is over characterization of the profits as gain from the sale of a capital asset as defined for purposes of section 1221.  Respondent later clarified that "respondent's position is that the transferable State income tax credit is an intangible personal property interest, the sale of which is a disposition of property under § 1001.  It is not, however, an interest in real property, and it is not 'property' as that term has been interpreted under § 1221."

Following our holdings in <u>Tempel v. Commissioner</u>, <u>supra</u>, we conclude that proceeds of petitioners' sales of Colorado State conservation easement tax credits in 2003 and 2005 are taxable as short-term capital gains.  To reflect the foregoing,

<u>An order and decision will</u>

<u>be entered under Rule 155</u>.